## Kittle v. Fremont.

1. PARTIES *to actions of public concern.* A common or public nuisance, if committed without lawful authority, can be remedied by a public prosecution instituted by the proper public officer, on behalf of the people.

2. ——: An individual who is specially injured by a common or public nuisance may maintain a suit to have the same abated.

3. ——: But a private person cannot maintain an action to abate a public nuisance unless he can aver and prove some special injury to himself.

4. LEGISLATIVE ACT APPROVING THE *alleged nuisance.* It is competent and proper for the legislature to validate the action of town authorities, in modifying the location of public parks, and such provisions operate to waive the ground of complaint of the public.

This was an appeal from a decree of the District Court for Dodge county. The facts appear in the opinion of the court.

*E. F. Gray,* for appellant.

The vacation of parks and closing of streets and alleys are not within the delegated powers of the trustees of towns in this State, as see *Nebraska Statutes of* 1855 *and '*56, *page* 41, *sec.* 4.

The trustees being ministerial officers created by statute, they can exercise no other or greater authority than is vested in them by the statute.—*Sedgwick on Statutes, etc., page* 466.

The legalizing act pleaded (see *Statutes of* 1861, *page* 117) is of that class of statutes called *Retroactive,* and is sometimes allowed to cure an irregularity in the election of officers and the like, but not to make valid what was in itself a nullity.—*Sedgwick on Statutes, etc., page* 198.

Besides this statute is scarcely definite enough to effect anything of itself, as to close this park, etc.

But were it sufficiently comprehensive for the purpose,

·KITTLE *v.* FREMONT.

still if there ever was a dedication of this park, etc., either statutory, at common law or resulting from the entry and trust imposed by the United States upon the trustees of the town, neither the legislature or municipal authority of the town have any power to interfere with the use of the park, streets and alleys as intended by such dedication.— *LeClercq* v. *Town of Gallopolis,* 7 *Ohio Reports* (*part first*) 218–222. *Lake Front case, reported in Chicago Times,* *August* 29*th,* 1869.

Filing the plat was equivalent to recording.—*Nebraska Statutes of* 1855 (*first session*), *page* 162, *sec.* 4.

The recording of the acknowledgment after filing the plat, completes the dedication. *Nebraska Statutes of* 1855, 6, *page* 43, *sec.* 2, and it matters not though the land be government land.—*Nebraska Statutes of* 1855, 6, *page* 44, *sec.* 9. The certificate may be defective. *Sec.* 8, *page* 44, *of Nebraska Statutes of* 1855, 6, is only directory, and the certificate is not essential to a dedication.—*Sedgwick on Statutes, etc., page* 368.

The recording of the acknowledged plat was the act of dedication.—*Town of Lebanon* v. *The Commissioners of Warren county,* 9 *Ohio Reports, page* 80.

The act of Congress of May 23, 1844, provides that town sites may be entered in trust, and the sale of lots to be regulated by legislature of territory, and a further provision that any act of trustees, not in conformity with such. rules, void.—*Brightly's Digest, page* 475, *sec.* 98 ; *same 5 vol. U. S. Statutes at large, page* 657 ; see *Nebraska Statutes of* 1857, *page* 133, *sec.* 2, as to sale of lots to pay expense of park, etc.

The town company went upon the land, under the presumed license and protection of the laws of the United States, (see *U. S. Statutes, act of* 22*d July,* 1854, *Brightly's Digest, page* 576, *sec.* 646 ; *U. S. Statutes, act May 23d,* 1844, *Brightly's Digest, page* 475, *sec.* 98, *and note*

*A ; same, page* 473, *sec.* 83. Also, 'see *Clements* v. *War-
ner,* 24 *Howard,* (*U. S. Reports*) 394 ; *States* v. *Stanly,* 6
*McQuean,* 409, 5 *vol., Opinions of Attorney General, page* 7;
*Opinion of E. M. Huntington, made Sept.* 15*th,* 1841, *found
in Estabrook's Forms, page* 234), with these guarantees
that their possession would be reserved and title perfected.
Such possession as the town company acquired, constituted
an equitable title, which enabled the town company to make
a valid dedication of the park, etc.—*Williams* v. *First
Presbyterian Church in Cincinnati,* 1 *Ohio State Reports,*
478 ; *Barclay* v. *Howard,* 6 *Peters,* (*U. S. Reports*) 506 ;
*City of Cincinnati* v. *White,* 6 *Peters,* 431, 433, 440.

And it will be seen too that in these Cincinnati cases the
dedication depended upon statute ; the mere act of platting
and selling lots being the only acts of dedication.

Supposing the acts of the town company were so irregu-
lar that there was no statutory dedication, still there would
be a common law dedication. See the Lake Front case
above referred to.

Rogers, as chairman of the trustees of the town, received
the patent of the town site in trust, as it was laid out on
the plat ; from the plat he received his authority, and is
estopped from conveying the park represented upon it to
individual uses.—See 3*d* vol. *Washburn on Real Property,
page* 70, *sec.* 7, *and page* 71.

The delegation of the trust to Rogers, and his sale of lots
in pursuance of the trust by the plat, of itself works a dedi-
cation and brings this case within the rules laid down in
the case of the *City of Dubuque* v. *Maloney,* 9 *Iowa,* 451.

The conveyance to the school and church corporations,
defendants, being without authority no title passes.—*Angle
and Ames on Corporations, sec.* 188.

The plaintiffs being owners of lots in and residents of the
town have an interest in the park and other public grounds,
which the courts may protect by injunction or enforce by

mandamus.—*The Trustees of Watertown* v. *Corden and Bagg*, 4 *Paige*, 510 ; *Brown* v. *Manning*, 6 *Ohio*, 305 ; *LeClercq* v. *Town of Gallopolis*, 7 *Ohio*, 221.

*E. Wakely,* for appellee.

I. The alleged " proprietors" who laid out the town, had no title to the land, and therefore could not make a statutory dedication of it.

At the time of the pretended "dedication" they were mere naked possessors. Having no title they could not convey or give one to the public.

The language of the statute that the plat and acknowledgement being recorded " shall `be equivalent to a deed in fee simple from the proprietor," is inapplicable to the mere naked possession which the assumed proprietors had. They could not convey a fee, having none to convey.

They were *occupants* only. And the plat merely evinced a permission to the public to occupy the public places, streets, alleys, etc. The occupancy by the public must be manifested by some actual and visible evidence thereof.

2. The attempted dedication was entirely insufficient as a statutory dedication.

The map or plat of the town was not recorded.

There was no proper certificate of the surveyor appended to the plat. The certificate did not show that the streets, alleys, public places, &c., had been staked off and marked.

The proof shows, beyond all denial, that the streets, lots, etc., *had not been* staked off at the time of filing the plat for record and for a long time thereafter.

3. There was a dedication of the old park, or acceptance of it by the public, by acts *in pais*.

The acts which show or tend to show a dedication to or acceptance by the public, are all referable to the park as it now is.

Prior to the change in its boundaries, by the resolution of the Board of Trustees, the original park existed only on paper. It was not used as a park. It was not separated by any visible boundaries or marks from the surrounding prairie, and was not distinguished from it. It was not even staked off. There was a prominent and main thoroughfare of travel from Fremont to the northern country running directly through it, and which was substantially a continuation of Broad street, now sought to be shut up. There was scarcely a building erected with any reference to it.

But soon after the change of boundaries, the present park was fenced, planted to shade and ornamental trees, and has ever since been used exclusively as a park.

The whole town has been built with reference to it. Fremont, then an insignificant hamlet of 200 or 300 inhabitants, has grown to be a flourishing town of 2,000 people. Its dwellings, its public buildings and business structures, have nearly all been located with direct reference to the park as now defined, and the streets as they now run.

All this has taken place not only with the assent but with the active sanction and public acts of the town authorities, and been acquiesced in by the public for eight years with no dissent or protest so far as appears until now.

Have not the inhabitants of Fremont a hundred fold more ground to insist on all these things as constituting a dedication to and occupancy by the public of the park with its present boundaries, than one or two individuals can prefer for going back to the old one?

4. The plaintiffs have no right to sue. They show no special damage to themselves. They sue only as a part of the public, and in the public right. This is the duty of the public authorities, not of individuals. This proceeding is analogous to one for abating a nuisance, which must be instituted by public officers. An individual sustaining

special damage may sue therefor; but he cannot sue in behalf of the public.

The plaintiffs own no property on the park, or on the streets affected by the change of its limits. This is necessary as the authorities show, to entitle them to sue.

5. So far as the public is concerned the legislative act ratifying the proceedings of the board is valid. The public is represented by the trustees of the town and the legislature, and may unquestionably release its right to a public ground. This power must reside somewhere. If it is not in the local authorities and legislative sovereignty combined, where is it? And by what acts or formalities can 'the public right be extinguished?

6. The public and the plaintiffs are estopped from proceeding against the church and the school district. The former, especially, was suffered to proceed with valuable and costly improvements upon the ground held by a title not controverted. Those who stand by quietly and suffer this to be done cannot afterwards object.

LAKE, J.

In the month of January, 1857, the plaintiff, Robert Kittle, together with several associates, known and acting as the Town Company, entered upon that portion of the public lands of the United States now included within the limits of the town site of Fremont, and surveyed and laid out a town with blocks, lots, streets, alleys, and a public square or park. By this survey and plat, the park, which is the subject of dispute in this proceeding, was located between Eighth and Ninth streets, running east and west, and F and H, running north and south through the town. Broad street, a wide and principal avenue, between F and H streets, was intersected by the park, which covered ground equal in area to two blocks, together with that

KITTLE *v.* FREMONT.

portion of Broad street upon which it was located. This was the condition of things until November, 1861, when the Board of Trustees of the town of Fremont conceived the idea of re-locating the park, by vacating all that portion thereof lying west of the east line of Broad street, and extending its boundaries east across F street, so far as to include block ninety-six. Up to the time of this change no improvements had been made upon the park. It was merely unimproved, vacant prairie ground. But very soon thereafter it was fenced, set out with shade and ornamental trees, and, in its appearance, began to indicate the use to which it was devoted. By this change Broad street was extended and opened through what was, until then, a portion of the old park ground. A new block of lots was carved out of that portion of the park lying west of Broad street. Portions of this new block have since been conveyed to the defendants, the Methodist Episcopal Church and School District Number One of the town of Fremont, for the purpose of erecting thereon a church building and school house. It further appears that since the re-location of the park, which act has been generally acquiesced in by the inhabitants of the town, the population of Fremont has increased from not more than two or three hundred to nearly, if not quite, two thousand souls; that the permanent settlement, building and business of the town have progressed and become established with direct reference to the park as it is now defined; that no objection has been interposed to this change by any person whose property fronts or borders upon the park, as originally or now established; that neither of these plaintiffs own any grounds adjoining the park, nor upon the streets affected by this change, nor are they shown to be affected to any greater extent, or in any other manner, than are all the rest of the inhabitants of Fremont. It further appears that subsequently to this action by the Board of Trustees, the legis-

lature of this State, in January, 1862, confirmed all and singular their acts in this behalf, and declared them to be valid in law.

The object of this suit is to enjoin the church and school district from erecting their proposed buildings upon the grounds so conveyed to them, and also to prohibit the town authorities from further incumbering the park grounds, as originally laid out, and to compel them to re-locate and establish said park and streets as they are designated upon the original plat of the town.

The magnitude of the interests involved in this controversy, and the disastrous results which would necessarily follow to a large number of the inhabitants of Fremont, should the prayer of the petitioners be granted, are sufficient reasons why the court should hesitate to grant it, and most certainly not until their right to such relief be very clearly established.

Several very interesting questions are presented by this record, which have been ably argued by counsel, but the views we take of the case relieve us of the necessity of noticing but one of them.

The plaintiffs sue on behalf of themselves and all others, the property holders of the town of Fremont. They do not pretend to have any interest in the subject matter of the suit, which is not common to all the other residents of the town, whether they be freeholders or not. The pretended grievance is one of general interest, and the question which we meet at the threshold, to be first determined, is, have they shown such an interest as will enable them to maintain this suit?

The pretended wrong of which the plaintiffs complain is the closing up of certain of the public streets and alleys, and the vacation of a portion of the public park. This is in the nature of a common or public nuisance, and if done without lawful authority, can be remedied by a public

-prosecution, instituted by the proper public officer, on behalf of the people. So, too, could a suit be maintained ·by any individual of the town in his own right who is specially injured thereby. The rule in such cases seems to be well established that in the case of a public nuisance, where a bill is filed by a private person, he cannot maintain his standing in court unless he aver and prove some special injury to himself.—*City of Georgetown* v. *The Alexandria Canal Company*, 12 *Pet.* 91; *Smith* v. *City of Boston*, 7 *Cush.* 254; *Hale* v. *Cushman*, 6 *Metcalf*, 425; *Doolittle* v. *The Supervisors of Broome County*, 18 *N. Y.* 155.

The plaintiffs are simply resident freeholders of the town of Fremont. They have no real estate bordering upon the park, or upon either of the streets affected by this change. They have sustained no special damage by reason thereof, and a very large majority of the inhabitants are benefited thereby. They present themselves before the court in the character of volunteer champions of the public interests, and in its behalf challenge the officers of the town to meet them in the courts of justice to defend their official acts, which appear not only to have been in harmony with the expressed wishes of a large majority of the people, but acquiesced in by all the inhabitants for several years without objection. Under these circumstances we are most clearly of the opinion that the plaintiffs show no such interest in the subject of this suit, nor are they in such position, as to enable them to maintain this action.

We might safely stop here, but there is one other question of interest to the people of Fremont, to which it is not improper to give a passing notice.

It is, as has been urged, that the action of the town board· in making this change was entirely without authority of law, and therefore void, and being void, the act of the legislature ratifying and confirming their acts, can have no

binding force or effect whatever. . Now, without any reference to the effect, if any, of this confirmatory statute upon private rights and interests, we are quite clear that so far as the public are concerned, it was entirely competent and proper for the legislature to enact it, and that to this extent full effect must be given to its provision.

The judgment of the District Court is in all things affirmed.

Judgment affirmed.