NORVAL, J., offered no opinion.

---

CITY OF OMAHA v ANDREW FLOOD.

FILED DECEMBER 8, 1898. No. 8499.

1. **Nuisance.** The essential ingredient of a nuisance is its unlawful or wrongful character.

2. ——: OBSTRUCTION OF STREET. The unlawful obstruction of a public street is a nuisance, but that which is authorized by competent legal authority does not in law constitute a nuisance.

3. ——: IMPROVEMENT OF STREET. When the authorities of a municipal corporation, invested by the legislature with authority so to do, construct an improvement in a public street, such improvement is not a nuisance, though it damage adjacent property, interfere with the owner's enjoyment thereof, and be negligently constructed.

4. **Improvement of Street:** DAMAGES TO ADJACENT PROPERTY: LIABILITY OF CITY. Where property fronting on a public street is damaged by the method or manner adopted by the authorities of a municipal corporation in permanently grading such street, the corporation is liable to the owner of such property for such damages.

5. ——: ——: ——. In such case the owner's measure of damages is the depreciation in value of his property caused by the construction and permanent maintenance of the grade.

6. ——: ——: ——: EVIDENCE. And for the purpose of arriving at the amount of such depreciation the fact that the grade, as constructed and maintained, obstructs, and will continue to obstruct, the owner's passage between his property and the street, decreases the rental value of his property, and interferes with his enjoyment and possession thereof, and every other fact and circumstance that would depreciate the market value of the property in the mind of a good-faith intending purchaser thereof, are proper elements for consideration,

7. ——: ——: LIMITATION OF ACTION. In such case the owner's cause of action accrues on the completion of the grade and is barred in four years thereafter.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Reversed.*

W. J. *Connell*, for plaintiff in error.

F. W. *Fitch*, contra.

RAGAN, C.

Sixth street is one of the public thoroughfares of the city of Omaha, and extends north and south. It is crossed at right angles by Pine street. These streets are each 100 feet in width. On the southeast corner of their intersection lies block 38 of Credit Foncier Addition, and in the northwest corner of this block are lots 3 and 4 thereof, the property of Andrew Flood. These streets intersect on the crest of a hill or bluff. The authorities of the city of Omaha duly caused the two streets to be graded, and in so doing made a cut in each of said streets in front of Flood's property 66 feet deep. The city, however, in grading these streets did not grade them to their full width of 100 feet, but graded only a width of 60 feet in each street, thus leaving an embankment on the north and west of Flood's property 20 feet wide. More than four years after the completion of this grade Flood brought suit in the district court of Douglas county against the city of Omaha, setting forth, in substance, the foregoing facts and alleging that the strips of earth left by the city ungraded between his property and the graded street interfered with his unobstructed passage between his lots and the graded streets; that such strips constituted a continuing nuisance; that prior to the grading his property had a rental value of $200 per year; that since the grading of the streets, and by reason of the manner in which they were graded, the rental value of the property had been decreased fifty per cent. Flood in his

petition further alleged that by reason of the city's grading the said streets in the manner it did, he himself had been unable to grade his lots or bring them to grade or to use the streets adjacent to his property, to his damage in the sum of $7,000. The city in its answer admitted the grading of the streets as alleged by Flood, and among other defenses interposed the statute of limitations. Flood had a judgment, to review which the city has filed here a petition in error.

It stands admitted by the record that these streets, as laid out and platted, were each 100 feet in width; that the city caused them to be graded to the width of only 60 feet, thus leaving a strip of earth or an embankment 20 feet wide on each side of each street between the graded portion thereof and the lot line of the abutting owner; that the city authorities of said city were by law invested with the power to grade these streets in the manner they did; that the work of grading was not negligently done, unless the partial grading of the street was negligence; and that Flood has sustained no injury or damage as the result of this grading, except such as resulted from its being a partial instead of a complete grading of the streets. Without following the specific assignments of error we proceed at once to the merits of the controversy.

1. The district court instructed the jury as follows: "A city has no right to obstruct its streets by itself or agents so as to deprive the property holder of free access to and from their lots abutting on the same. If it permits the use of a street to be in any manner obstructed, it must see that the approach is so constructed as not to produce injury to adjacent property holders. If you believe from the evidence that damage to the plaintiff has been occasioned by the alleged obstruction complained of, and that the same has operated as an injury to the use and occupation of plaintiff's premises and has caused a loss of rents, or his comfortable enjoyment thereof has been lessened, then you are instructed to find

from the evidence to what extent an injury has been occasioned thereby.    *    *    *    The embankments complained of in this case, if they have worked any hurt, injury, damage, or inconvenience to the plaintiff, constitute a continuing nuisance, and the statute of limitations is not a bar to plaintiff's right to recover in this suit such damages as the jury shall find from the evidence he has sustained within four years next previous to the date when this suit was brought." The court refused to instruct the jury as follows: "You are instructed that the city was under no obligation to grade the property lying between plaintiff's lots and the streets of the city of Omaha,    *    *    *    and no such duty is enjoined upon the city by the charter of metropolitan cities, or by law; and that said earth standing upon said property lying between the street of the city of Omaha and the premises of plaintiff was not in law, as applicable to the evidence in this case, a nuisance. As the undisputed proof in this case shows that the grading in controversy was done more than four years prior to the commencement of this action, all claims for damages by reason of such grading are fully and completely barred by the statute of limitations at the time of the commencement of this action. You are instructed that unless the banks of earth    *    *    * adjoining Sixth    *    *    *    and    *    *    *    Pine streets were nuisances, no recovery whatever can be had in this action.    As to whether these strips, or either of them, was a nuisance, it was proper for you to consider whether the ground comprising these strips was left in its original condition; and if it was, and by no act of the city it was changed from its original condition, the said banks would not be a nuisance such as would give the plaintiff a right of recovery by reason of allowing them to remain in their original condition."

We have quoted these instructions for the purpose of showing the theory upon which this case was tried in the court below. It will be observed that the theory of Flood was—and the district court adopted it—that these un-

graded portions of the street obstructed Flood's passage
between his property and the graded portion of the
streets, disturbed him in the enjoyment of his property,
depreciated its rental value, and that therefore the un-
graded portions of the street constituted a continuing
nuisance. We think this theory was wrong. The city
authorities were clothed with the amplest jurisdiction as
to its streets, were not only invested by law with the con-
trol and management of its streets, but were expressly
authorized to open, to extend, to widen, to narrow, to
grade, to improve and keep in repair the streets to any
width they might deem best for the interests of the city.
Suppose the city authorities, instead of causing a cut to
be made at the intersection of these streets, had con-
structed tunnels there. Then, doubtless, these tunnels
would have obstructed Flood's passage between the
property and the tunnels quite as much as the cuts do;
but would the courts have been authorized to say that
these tunnels constitute a nuisance? We think not. Sup-
pose Flood's property, instead of being on the crest of the
hill, should have been located in a depression between
two hills and the city authorities had, in the streets on
which his property abutted, caused to be erected a fill or
had built viaducts and these had obstructed Flood's pas-
sage between the traveled streets and his property, and
caused him a loss of rents. Would it follow that this
viaduct or this fill would therefore be a nuisance? We
think not. The basis of every nuisance is its unlawful
or wrongful character.

The trouble with Flood's theory and that of the dis-
trict court is they assume that because the partial grad-
ing of the street as done by the city authorities caused
Flood's damage and an injury, therefore it was a nui-
sance. It by no means follows that because of the man-
ner in which a street is graded or any other public im-
provement is made, damaging an abutting property
owner, such public improvement or street grading is a
nuisance. The grading may be done or the public im-

provement may be erected in a negligent manner, and yet it would not follow that it was a nuisance, and that the courts had a right to abate it.   Here the improvement complained of as a nuisance was neither wrongfully nor unlawfully made.   It was made by authority of law, and the manner of its making was one committed to the discretion of the city authorities; and if we concede that, by the improvement as made, Flood was disturbed in the possession of his property and suffered a loss of rents and that the improvement was negligently made, still it was not a nuisance.   A nuisance is something wrong-, fully done or permitted which injures or annoys another in the enjoyment of his legal rights; and since the very definition assumes the existence of wrong, those things which may be annoying or damaging, but for which no one is in fault, are not to be deemed nuisances, though all the ordinary consequences of nuisance flow from them.   (Cooley, Torts p. *566.)   Of course the unauthorized or unlawful obstruction of a public street is a nuisance, but that which is authorized by competent legal authority cannot in law constitute a nuisance.   (*Davis v. Mayor*, 14 N. Y. 506.)   In *Garrett v. Lake Roland E. R. Co.*, 29 Atl. Rep. [Md.] 830, it was held that the location of an abutment in a public street to be used as an approach to an elevated railway, when authorized by the ordinances of a city, was not a nuisance.   The supreme court of the United States in *Transportation Co. v. Chicago*, 99 U. S. 635, laid down the broad proposition: "That which the law authorizes cannot be a nuisance, such as to give a common-law right of action."

In support of his contention that the portions of the street left ungraded by the city in front of his client's property constitute a nuisance counsel for Flood have cited us to numerous cases.   One of these cases is *Brakken v. Minneapolis & S. P. R. Co.*, 11 N. W Rep. [Minn.] 124.   But that case holds, and holds only, that the owner of lots abutting on a public street has such a special interest in the street as to entitle him to main-

13

tain a private suit for damages against a party who wrongfully obstructs the street in front of his property. The street in front of the plaintiff's property in that case had been obstructed and the plaintiff's property damaged by the construction of a railroad in the street. It does not appear whether the railroad was constructed in the street in pursuance of authority granted by the city council which had control of the street, but the case rests upon the principle that the railroad was wrongfully in the street. If the railroad had been constructed in that street without permission of the city authorities who had control of the street, then the railroad company was a trespasser, the railroad was wrongfully in the street, and it was a nuisance.

Another case cited is *Stack v. City of East St. Louis*, 85 Ill. 377. In that case the city of East St. Louis authorized a bridge company, which owned a bridge across the Mississippi river at East St. Louis, to construct an approach to its bridge in one of the public streets of the city in front of Stack's property. The bridge approach obstructed Stack's passage between his property and the street in which the approach was constructed. The rental value of the property was diminished by the noise and confusion incident to persons traveling over the approach, and the court held that the city of East St. Louis was liable to Stack for the damages which his property had sustained by reason of the construction and maintenance in the street in front of his premises of this bridge approach. Whether the approach to the bridge was a nuisance was a point not mentioned in the case. The decision of the court was based upon the proposition that the bridge approach was not one of the purposes for which the street was originally granted; that the use of the street for a bridge approach was a purpose foreign to the grant. In other words, that the bridge approach was a burden additional to those for which the street was granted by the original owner of the soil.

Another case is *Davis v. Mayor*, 14 N. Y. 506. In that

case Sharp and others procured permission from the city authorities of the city of New York to construct a railroad in Broadway, one of the principal streets of said city. Davis brought a suit to enjoin Sharp and his associates from constructing this railroad, on the grounds that the laws of the state of New York had not conferred any authority upon the city authorities of the city of New York to permit its streets to be used for the purpose of building and operating therein a railroad, and that the improvement, if erected, would be a nuisance, and the court sustained Davis' contention. The distinction between that case and the one at bar is obvious. There the railroad in the street would obstruct it, and its presence there would be unlawful and unauthorized. Here the embankments which it is alleged obstruct the street, and which it is alleged constitute a nuisance, are not there unlawfully; and to paraphrase the language of Denio, C. J., in the *Davis Case:* If the embankments are lawfully in the streets, then it is impossible they should constitute a nuisance, as that is an offense which cannot be predicated on the lawful exercise of authority upon a subject to which it is applicable.

Another case cited is *Omaha & R. V. R. Co. v. Standen,* 22 Neb. 343. In that case the railroad company had constructed a bridge across the Platte river and in so doing had constructed it so low that when the river was high and the ice flowing the bridge arrested the ice and caused the water to flow over the lands of adjoining proprietors and damage them, and it was held that for these damages the railway company was responsible. But this case does not decide that the bridge which was the subject of complaint was a nuisance, but the railway company which constructed it was held liable upon the principle that one must so use his property as not to unnecessarily and negligently injure another. The liability of the railway company was put upon the ground of its negligence, and not upon the grounds that its bridge was unlawful or unauthorized, or a nuisance. Other cases resting upon

the same principle as the *Standen Case* are: *Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb. 526; *City of Beatrice v. Leary,* 45 Neb. 149; *Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb. 698.

A further review of cases* cited by counsel for Flood in support of his contention that these embankments constitute a nuisance would be unprofitable. Suffice it to say that they do not contradict the proposition that when the authorities of a municipal corporation invested by the legislature with authority so to do construct an improvement in a public street, such improvement is not a nuisance, though the improvement damage adjacent proprietors and interfere with the owners' enjoyment thereof and be negligently constructed.

2. Another theory of counsel for Flood, and adopted by the district court, was that the manner in which the city graded the intersection of these streets,—that is by grading sixty feet thereof and leaving a twenty-foot strip on each side ungraded,—was negligence. For the purpose of this case we assume, but we do not decide, that the manner in which the city graded the intersection of these streets was a negligent one; that the leaving untouched and ungraded of twenty feet of the soil, as it originally existed, on each side of the street was negligence, and as the result of that negligence Flood's property was depreciated in value, the rental value of his property depreciated, and his passage between his prop-

*City of Pekin v. Brereton, 67 Ill. 477; Nevins v. City of Peoria, 41 Ill. 502; Park v. Chicago & S. W. R. Co., 43 Ia. 636; Blesch v. Chicago & N. R. Co., 43 Wis. 183; Carl v. Sheboygan & F. D. L. R. Co., 1 N. W. Rep. [Wis.] 295; Wilder v. De Cou, 26 Minn. 10; Lackland v. North Missouri R. Co., 31 Mo. 181; Byrne v. Minneapolis & S. L. R. Co., 36 N. W. Rep. [Minn.] 339; Emmons v. Minneapolis & S. L. R. Co., 36 N. W. Rep. [Minn.] 340; Francis v. Schoellkopf, 53 N. Y. 152; Hopkins v. Western P. R. Co., 50 Cal. 190; Frith v. Dubuque & C. D. & M. R. Co., 45 Ia. 406; Wetmore v. Tracy, 14 Wend. [N. Y.] 252; State v. Atkinson, 24 Vt. 448; State v. Woodward, 23 Vt. 92; Smith v. Putnam, 62 N. H. 369; Nelson v. Godfrey, 12 Ill. 20; Harper v. City of Milwaukee, 30 Wis. 365; Kobs v. City of Minneapolis, 22 Minn. 159; Shepherd v. Willis, 19 O. 142; Thayer v. Brooks, 17 O. 489; Palmer v. City of Lincoln, 5 Neb. 144; Davis v. Mayor, 14 N. Y. 507; Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322.

erty and the graded streets obstructed; but when did these damages accrue? We think when the grading was completed. At that time his cause of action accrued, and then, or at any time within four years thereafter, he might have sued the city for such injuries; and the measure of his damages would have been the difference in value of his property as it existed before the grades and cuts were made and as it existed afterwards, and in estimating and determining this difference in value the facts that the grades as made obstructed his passage between his property and the streets and decreased the rental value of his property would have been competent considerations. A prudent intending purchaser of this property, after this grade was completed, would have perhaps given less for the property because of the manner in which the city had graded these streets. The damages, then, sustained by Flood by reason of the manner in which these cuts were made were all embraced within the damages awarded to him, if such award was made, by reason of his property having been damaged for public use. If no such award was made, and he brought suit and obtained a judgment against the city for the damages, then the damages claimed in this action were embraced within the judgment rendered in such suit. In other words, the damages which he claims here accrued more than four years before he brought this action. (*Omaha & R. V. R. Co. v. Moschel,* 38 Neb. 281; *Omaha & S. R. Co. v. Todd,* 39 Neb. 818.) In *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90, the railway company constructed its road in a public street in front of O'Connor's property, and operated its trains thereon, and erected in said street a coal-house, and hoisting apparatus, and side tracks for use in connection therewith. More than four years after these obstructions were placed in the street O'Connor sued the railway company for damages, alleging that the running of engines over its tracks injured the walls, foundations, and plastering of his house; that the ringing of bells and sounding of

whistles, the noise from escaping steam, and the smoke, dust, and soot arising from operating the engines and unloading of coal at the coal-house rendered the occupancy of his premises uncomfortable, and depreciated its rental value; and it was held that O'Connor's cause of action accrued at the time these obstructions were permanently placed in the street, and that these facts of which O'Connor complained, and every other fact and circumstance that would have injured the market value of the property in the mind of a good-faith intending purchaser thereof, would have all been proper elements for consideration in determining the damages which O'Connor's property had sustained by reason of the careful construction and proper operation of the railway and coal-house in the street. The embankments left by the city in grading the intersection of the streets in controversy were not temporary obstructions. Their presence in the street was owing to the method adopted by the city authorities in grading these streets. They were permanent, and whatever damages Flood sustained by reason thereof accrued when they were completed. The judgment of the district court is contrary to law and it is reversed and the cause remanded.

REVERSED AND REMANDED.

