WILLIAM BISCHOF, APPELLANT, V. MERCHANTS NATIONAL BANK ET AL., APPELLEES.

FILED FEBRUARY 22, 1906.  No. 14,024.

1. **Highways: NUISANCE.** Public highways belong, from side to side and from end to end, to the public, and any permanent structure or purpresture which materially encroaches on the public street and impedes travel is a nuisance *per se;* but in a proper case such obstructions may be authorized by competent authority.

2. **Nuisance: INJUNCTION.** A private person seeking the aid of equity to restrain a public nuisance must show some special injury peculiar to himself, aside from and independent of the general injury to the public.

3. The easement of view from every part of the public street belongs, as a valuable right, to one owning property abutting on the street, and will be protected by the courts against unlawful encroachments.

4. **Nuisance: EQUITY.** Where a nuisance is not permanent, and the damages caused thereby are not recoverable in one action, but would require successive actions, the injured party has no adequate remedy at law.

5. A permanent nuisance is one of such a character, and which exists under such circumstances, that it will be presumed to continue indefinitely.

6. **Permanent Nuisance.** But a structure constituting a nuisance, maintained in violation of a positive statute, which is not necessary to the conduct of any lawful business, and which is not an inseparable nor a necessary part of the unfinished building to which it is attached, will not be presumed to continue indefinitely and is not a permanent nuisance.

7. Evidence examined, and *held* insufficient to show that the plaintiff had consented to the erection of the obstruction constituting a nuisance.

8. **Nuisance: INJUNCTION: LACHES.** Where a party protests or objects against the erection of a proposed obstruction to the party about to erect it, and the latter proceeds over such protest and objection to complete the obstruction, he cannot complain because the former delayed ten days in bringing suit to restrain the nuisance which had been completed in the meantime.

APPEAL from the district court for Otoe county: PAUL JESSEN, JUDGE. *Reversed with directions.*

*Roddy & Bischof,* for appellant.

*W. F. Moran,* contra.

ALBERT, C.

This is a suit for relief by injunction. It appears from the pleadings and the evidence that the plaintiff is the owner of a business lot in Nebraska City, and the defendant bank is the owner of the east half of a like lot, adjoining plaintiff's lot on the west. Both properties front on the principal business street of that city extending east and west. The lots are about 48 feet in width. On the west half of the plaintiff's lot there is a two-story brick building, used for a store building, or for mercantile purposes. The bank's property had been covered by a building used for a bank. Both buildings fronted on the street above mentioned and faced north. Sometime previous to the commencement of this action the bank building was damaged by fire, and defendant bank commenced to rebuild. The plaintiff's building appears to be of brick, with a glass front, and the bank building, as reconstructed, is of brick and stone. The two are separated only by walls, with no space between them, and both are flush with the sidewalk. The entrance to the plaintiff's building is at the middle of the front; that of the bank's at the extreme east of the front, where it joins plaintiff's building. The defendant Wales has charge of the work on the new bank building, and is not otherwise interested in the suit. In the reconstruction

of the bank building, a stone about five inches thick and ten feet long extends outward from the building and upon the sidewalk about two feet ten inches. On this stone, on either side of the entrance to the bank building, are two heavy side bases about three feet high, extending outward from the building about two and one-half feet. On each of the bases there is a stone pillar about 13 inches in diameter at the base and tapering slightly, which extends to the top of the first story of the building. The pillars are surmounted by a cap of solid stone extending outward from the building about the same distance as the foundation stone. The work on that portion of the building just described was commenced on the 4th day of August, 1903, and was completed before the commencement of this suit, which was begun, and the temporary order allowed, on the 13th day of the same month. It appears in evidence, however, that before the work was begun the plaintiff, when informed by the defendant Wales that it was contemplated, told him that he would not permit it. It also appears that he made complaint to the city council, and that a written notice, signed by the mayor, to discontinue the work was served on the bank on the day after the work began. The record contains an ordinance of the city making it unlawful "to obstruct the sidewalks or sidewalk space in said city in any manner."

The plaintiff bases his claim to relief on the ground that the projection of the stone work in front of the bank building is a public nuisance, in that it encroaches upon a public street, and that he sustains special damages, independent of such damages as are sustained by the public at large, because the obstruction cuts off the view to his adjoining building. The contention of the defendant is that the plaintiff has sustained no such special damages as will give him standing in a court of equity, that he has a plain and adequate remedy at law by an action for damages, that he is guilty of laches, and that he stood by and acquiesced in and consented to the obstruction. The court denied the plaintiff relief on the ground that his

damages could be ascertained with reasonable certainty in an action at law.   The plaintiff appeals.

That the stone and pillars of the new portico to the bank building, as now remodeled, extend into the public street is conceded; that such an obstruction constitutes a public nuisance is not only the doctrine of the common law, but falls within the statutory definition.   Cr. code, sec. 232.   Elliott, in his valuable work on Roads and Streets (2d. ed.), sec. 645, says: "Public highways belong, from side to side and end to end, to the public, and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se,* and may be abated, notwithstanding space is left for the passage of the public.   This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden not only to adjoining owners, but to all the taxpayers and the traveling public as well. Thus, expediency forbids any other rule.   But, even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler.' " *Nebraska Telephone Co. v. Western Independent L. D. T. Co.,* 68 Neb. 772; *State v. Edens,* 85 N. Car. 522; *Webb v. Demopolis,* 95 Ala. 116; *Field v. Barling,* 149 Ill. 556, 24 L. R. A. 406; *Dill v. Board of Education,* 47 N. J. Eq. 421, 10 L. R. A. 276; *State v. Berdetta,* 73 Ind. 185; *Mc-Cloughry v. Finney,* 37 La. Ann. 31; *City of Omaha v. Flood,* 57 Neb. 124; *First Nat. Bank v. Tyson,* 133 Ala. 459, 59 L. R. A. 399; *Codman v. Evans,* 5 Allen (Mass.), 308; *Marini v. Graham,* 67 Cal. 130.   Of course, such obstruction may be authorized in a proper case by competent authority.   *City of Omaha v. Flood, supra.*   But

there is no claim that the obstruction was authorized in this case. On the contrary, the defendants were distinctly warned both by notice and ordinance that it would not be permitted. It is also true that the mere fact that the obstruction constitutes a public nuisance would not entitle the plaintiff to relief by injunction. 1 High, Injunctions (4th ed.), sec. 762, says: "No principle of the law of injunctions is mere clearly established than that private persons, seeking the aid of equity to restrain a public nuisance, must show some special injury peculiar to themselves, aside from and independent of the general injury to the public. And in the absence of such special and peculiar injury sustained by a private citizen, he will be denied an injunction, leaving the public injury to be redressed upon information or other suitable proceeding by the attorney general in behalf of the public." Among the numerous cases cited in support of the text is *Shed v. Hawthorne,* 2 Neb. 179. But the doctrine is so universally recognized that further citations are unnecessary.

This brings us down to the question whether the plaintiff has sustained any special injury peculiar to himself, aside from and independent of the general injury to the public. On this point we derive but little aid from the opinions of different witnesses. That the obstruction in question obstructs the view to the front windows of the plaintiff's building, which is kept for mercantile purposes, is self-evident. The value of the front windows of a mercantile house, for the display of goods and wares for advertising purposes, and of an unobstructed view thereto are matters of common knowledge. The value of a conspicuous business front was not lost sight of by the defendant bank when it planned an ornamental entrance, which extended outwards beyond the sidewalk line, and beyond the front line of adjacent buildings. It requires no evidence to show that any unlawful obstruction that cuts off, to a substantial degree, the view to the front of a business house or renders it less valuable for the display of goods and advertising purposes, is a damage to the

owner of such building, and a damage which is special and peculiar to him, and independent of any damage sustained by the public "at large. In *First Nat. Bank v. Tyson, supra*, it was held that the easement of view from every part of a public street, as well as that of light and air, belongs, as a valuable right, to one owning property abutting on the street, and will be protected by the courts against illegal encroachments. See, also, *Dill v. Board of Education, supra; Costello v. State,* 108 Ala. 45; *Trenor v. Jackson,* 46 How. Pr. (N. Y.) 389; *Townsend v. Epstein,* 93 Md. 537; *Hallock v. Scheyer,* 33 Hun (N. Y.), 111; *Story v. New York Elevated R. Co.,* 90 N. Y. 122; *Wyman v. Mayor,* 11 Wend. (N. Y.) 487; *Schulte v. North Pacific T. Co.,* 50 Cal. 592; *City of Denver v. Bayer,* 7 Colo. 113; *Newell v. Sass,* 142 Ill. 104; 2 Dillon, Municipal Corporations (4th ed.), sec. 556; *Haynes v. Thomas,* 7 Ind. 38; *Perry v. Castner,* 124 Ia. 386; *Lahr v. Metropolitan E. R. Co.,* 104 N. Y. 268; *Barnett v. Johnson,* 15 N. J. Eq. 481; *Field v. Barling, supra.*

The defendant cites many cases to the effect that a court of equity will not interfere by injunction to prevent the erection of a building merely because it will obstruct the view of plaintiff's place of business. One of the cases is *Hay v. Weber,* 79 Wis. 587. There the owner of a business building in the city of Oshkosh brought suit to enjoin the erection of bay windows on an adjoining building, extending from 18 to 20 inches into the street. It appears from the statement of the case that it was customary in that city to use a portion of the sidewalk for the display of goods, and that there was an ordinance in effect which provided that it should be lawful for any person to use a portion of the sidewalk, not exceeding three feet in width, for the purpose of setting out and exhibiting goods, either by placing them on or suspending them over the sidewalk. The court reversed the order of the lower court granting an injunction. The plaintiff there claims that bay windows obstructed the view of his premises, and interfered with and damaged his business. The court,

in disposing of that claim, said: "It is difficult to perceive how such obstruction could result in such damage, but, assuming that it would, yet, such damage would be too remote and speculative to constitute the basis of a private action at law or in equity." The decision in that case must be read in the light of the conditions that existed in that city. The use of the sidewalk for the display of goods was allowed by ordinance. The bay windows, which evidently were intended to be used for the display of goods, did not constitute a greater obstruction to the sidewalk than what the ordinances of the city contemplated. We think the opinion shows that the learned court was largely influenced by those considerations. As above intimated, the value of conspicuousness to a building used for mercantile purposes is a matter of common knowledge. The obstruction complained of in this case was constructed to give the bank building that very quality, and was so placed as to render the plaintiff's building less conspicuous and more difficult to distinguish from other buildings in the same locality. This, we think, is an obvious damage to the plaintiff. The other cases cited by the defendant, so far as we have been able to examine, have no reference to public nuisances, or to structures built in violation of some positive statute, but to buildings lawfully erected and erected for a lawful purpose. Cases of that kind rest on an entirely different principle than where the structure complained of constitutes a public nuisance and is maintained in violation of a positive law.

The contention that the plaintiff has an adequate remedy at law can be sustained, if at all, only on the theory that the nuisance is permanent and the plaintiff's damages, including future and prospective damages, may be ascertained with reasonable accuracy and are recoverable in one action. Otherwise, a court of equity would interfere by injunction to prevent a multiplicity of suits. In none of the cases cited, nor in any that we have examined, is there any attempt at an accurate definition of what con-

stitutes a permanent nuisance. In *Cleveland, C. C. & St. L. R. Co. v. King,* 23 Ind. App. 573, 55 N. E. 875, after an exhaustive review of the authorities, the court reaches the conclusion that "the presumption is that a nuisance that can be abated will be abated." That case, and the authorities there cited, suggest the definition that a permanent nuisance is one of such character, and which exists under such circumstances, that it will be presumed to continue indefinitely. In the present case, the obstruction is maintained in violation of a positive statute and city ordinance forbidding the obstruction of public streets. It is not a necessary incident to the conduct of the business of the bank, or any other lawful business. It is not an inseparable nor a necessary part of the building, but appears to have been constructed merely for ornamental purposes. The new erection was not entirely completed when the suit was begun. In view of these facts, the nuisance does not fall within the foregoing definition. As was said in *Hargreaves v. Kimberly,* 26 W. Va. 196, 53 Am. Rep. 121: "Here the cause may be removed, and it is supposed will be by the defendant, rather than submit to having the entire damages recovered against him, for a permanent injury, or to suffer repeated recoveries as long as the cause of the injury continues." We cannot presume that the defendant bank will persist indefinitely in a violation of a public statute, nor that the officers of the law would permit such violation. We hold therefore that the nuisance is not to be regarded as a permanent nuisance, but one which is abatable, and that the court should interfere for the protection of the plaintiff's rights by injunction to prevent vexatious litigation and a multiplicity of suits.

As to the claim that the plaintiff stood by and consented to the obstruction, it is not borne out by the evidence. The defendant Wales himself testified that, when he was about to commence work on the obstruction, the plaintiff told him he would not permit it. It is true, the same witness testified that after the bases of the pillars were laid the plaintiff told him that he could not see that it (the

proposed obstruction) would hurt anything, but this is denied by the plaintiff. The witness further testified that after the work was completed the plaintiff expressed himself as satisfied with it, etc., but this is also denied, and, even if true, was after the work was done and too late to afford a basis for an estoppel by laches. Mere delay in asserting a right will not necessarily preclude relief; there must also be shown a change in the situation of the parties, whereby the one has been put in a worse condition by the delay of the other. *Parker v. Bethel Hotel Co.*, 96 Tenn. 252, 31 L. R. A. 706; *Hall v. Otterson*, 52 N. J. Eq. 522; *Chase v. Chase*, 20 R. I. 202; *Hamilton v. Dooly*, 15 Utah, 280. We find nothing in the record to justify a finding that the defendants were influenced in the slightest degree by any statement or delay of the plaintiff. On the contrary, we think the most reasonable inference from the evidence is that they proceeded with the work over his protest. After he had lodged his protest, a delay of ten days in bringing his suit was not unreasonable and does not constitute laches.

Another contention of the defendants, as expressed in the language of their brief, is: "The plaintiff entirely abandoned the allegations of his petition at the very outset of the trial, and bent all his energies to prove that he was damaged on account of the destruction for advertisement purposes of the west show window of his said building. The court permitted the evidence to go in over the objection of the defendants that the same was incompetent and not within the issues." This contention is unfounded. The complaint in the petition that he was damaged because of the "cutting off and obstructing the light, air and view" of plaintiff's building is squarely met by the proof and fully sustained.

We think the plaintiff has shown himself entitled to relief in this suit and we therefore recommend that the decree of the district court be reversed and the cause remanded, with directions to enter a decree enjoining the defendant bank to abate said nuisance, and perpetually

enjoining and restraining the defendants from a continuation, repetition or renewal thereof.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree enjoining the defendant bank to abate said nuisance, and perpetually enjoining and restraining the defendants from a continuation, repetition or renewal thereof.

JUDGMENT ACCORDINGLY.