MICHAEL GLEASON, APPELLEE, V. LOOSE-WILES CRACKER & CANDY COMPANY, APPELLANT.

FILED DECEMBER 10, 1910.    No. 16,223.

1. Nuisance:    INJUNCTION.    The process of injunction cannot be availed of by a private citizen to abate a public nuisance, unless he suffers special or peculiar injury therefrom, aside from that suffered by the general public.

2. ——: ——: EVIDENCE. Evidence examined, and held that it fails to show that any special injury or damage to the plaintiff's property will result if the proposed sidewalk is laid according to the plan now contemplated by the defendant. But, held further, that the restraining order and temporary injunction were properly allowed, for the reason that if the first plan were followed special damage to plaintiff would occur.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. Reversed and dismissed.

· McGilton, Gaines & Smith, for appellant.

Mahoney & Kennedy, contra.

LETTON, J.

This is an action to enjoin the construction of a sidewalk. The plaintiff is the owner of a lot facing north on Chicago street, in the city of Omaha, and abutting to the east on Twelfth street which runs north and south. Chicago street has been improved by permanent curbs, gutters, and sewers, and Twelfth street at this point has like improvements, and is also paved as far north as Chicago street. Twelfth street is 100 feet wide, and 20 feet on each side is reserved for sidewalk use. On the plaintiff's lot there are three frame buildings opening on Twelfth street, one of which, a double house standing nearest the corner of Chicago street, is occupied by him as a dwelling, and the other two, which are one-story cottages, are rented for residence purposes. The defendant is the owner of the lot immediately south of that belonging to plaintiff. The rear end of this lot is directly across the alley from plaintiff's, and it faces on Davenport street, which is the first street south. The petition alleges that the defendant is constructing on this lot a building, the plan of which contemplates the erection of a raised sidewalk the full length of the lot and extending 20 feet into Twelfth street; that the proposed raised walk will be not less than seven feet above the sidewalk grade and will be covered with a gravel roof some ten feet high, which will specially damage plaintiff by cutting off the light, air, and view of plaintiff's premises from the south, will cut off the sunlight from a portion of the premises, and will permit snow, ice and sleet to accumulate thereon in the winter time, and thus make the premises less desirable and less comfortable for a home; that it will obstruct and cut off the direct and convenient thoroughfare to and from the principal business part of the city from the lot; will constitute a public nuisance, and be specially detrimental and damaging to plaintiff's property. The prayer was for an injunction to restrain the construction of any sidewalk above the present sidewalk grade on Twelfth street.

The answer admits the facts pleaded as to the ownership and situation of the respective properties with respect to the streets, pleads that this portion of Twelfth street is only suitable for wholesale houses or manufacturing establishments, and that there is a railroad track on the west side of the street within a few feet of the curb line running along the property of both plaintiff and defendant.  It further pleads that the plaintiff has ready and direct access to the principal business part of the city by way of Chicago street and Thirteenth street, and denies that the contemplated sidewalk will in any way damage his property.  It affirmatively pleads that in its business it receives daily several carloads of material which must be taken from cars on the track in Twelfth street into the building, and it is necessary that the passageway between the cars and the building be level, as otherwise it would endanger the safety of people traveling along the sidewalk during the unloading of barrels and other heavy material; that it has received from the city council by ordinance permission to construct the sidewalk on the level of Davenport street; that there is now a temporary sidewalk in front of the lot on Twelfth street, and that a permanent and substantial sidewalk is necessary; that the sidewalk thus authorized is in accordance with the practice of the mayor and council for many years throughout the wholesale part of the city, and that it will not inconvenience public travel along the street.  It further alleges that the entrance to its building is about the middle of its frontage on Twelfth street; that the present plan is to construct the sidewalk upon a level from the southwest corner of its building on Davenport street along Davenport and Twelfth streets to the entrance where it will be about four feet above the street surface, and from there to slope it down at a grade of one foot in ten to a level with the curb at the alley, so that there will be an easy ascent from the alley to the point opposite the entrance to the building.  In its reply the plaintiff pleads that it has had no notice of any intention to change the grade of Twelfth street or the sidewalk thereon, that no

change of grade has been made, and that no damages have been paid to him for any such change. A number of other denials are made, but the reply is in effect a general denial of the affirmative pleas in the answer.

The evidence shows that all of plaintiff's buildings are built close to the lot line facing east upon Twelfth street, that there is a space of five or six feet between the front of his houses and the present sidewalk, which has been fenced in by him, that the sidewalk is an old one made of boards, and that a large cottonwood tree stands in the sidewalk space. North of Chicago street Twelfth street is unpaved, and at the distance of about a block north is blocked by railroad tracks intersecting it. A large part of the travel of the workmen to and from the Union Pacific shops is over the sidewalk in question, and the street is also used by traffic to and from the Illinois Central freight station, which lies to the eastward on Chicago street. While the plaintiff and his tenants could reach the main business portion of the city by going one block west on Chicago street, thence south on Thirteenth street, it has been their custom for years to use Twelfth street in front of defendant's lot, which is, in fact, their most direct route to the business center.

After the defendant purchased the lot, and before commencing the work of building, an ordinance was passed by the city authorities granting defendant permission to maintain platforms or shipping docks on the west side of Twelfth street, 20 feet in width, to be constructed of concrete and cement, to be not more than seven feet high, and to be provided with steps at the ends and corners, the platform to be covered with a gravel roof with iron supports. After this ordinance was passed and approved, the plaintiff, learning of the purpose of defendant to erect this dock, procured a temporary injunction restraining the defendant from obstructing the sidewalk space, which was afterwards made perpetual. Defendant appeals.

The evidence for the defendant is that it is not its intention to erect a shipping dock such as is described in the

ordinance, but that it proposes to construct a level cement sidewalk from the southwest corner of its building at Twelfth and Davenport streets, along Davenport to the corner where it would be about two feet above the street, and from thence to the entrance to the building, and from that point the walk would slope to the north at a fall of one foot in ten until it reached the alley between its and plaintiff's lot; that in its business it uses heavy barrels and boxes of flour, lard and molasses, and that it is necessary for the safety of the public and of its employees that these articles, when unloaded from the cars, be dropped on a level surface, and not upon a sloping one such as would be the case if the walk was laid at the present grade of the street. It is also shown that the cost of handling the material would be increased.

The conclusion we draw from the evidence on this point is that defendant's anxiety for the level walk is not so much on account of concern for public safety as for convenience and economy in the cost of operation of its plant. There was much evidence adduced before the trial court which bears little relation to the real issue before the court. There is some testimony to the effect that the present grade of Twelfth street at this point is $\frac{3}{8}$ of an inch to the foot, and that to the southward toward Douglas street the grade is much steeper, but this is indefinite, not based, so far as shown, upon any plat, profile, or survey, and not given by an engineer or proved by an ordinance. There is no evidence whatever to show that if the sidewalk is built on a level to the entrance, and then sloped to the alley, it would in any way interfere with public travel along the street. In fact, the conclusion we draw from the evidence is that a substantial cement sidewalk, 20 feet in width, would afford much better facilities for the public than the old brick sidewalk which occupied the ground previous to defendant's purchase of the property. The only witness produced to testify as to the effect of the proposed construction upon the view, and upon the passage of air along the sidewalk space if the contemplated improvement is

constructed, was Mrs. Miller, the plaintiff's daughter, but upon objection the court excluded most of her testimony on these points. She was, however, per mitted to testify that Twelfth street to the south would not reach the level of a four-foot obstruction placed on the sidewalk space immediately east of defendant's lot. This, however, is at variance with her father's evidence, who testified that Twelfth street slopes upward to the south until it reaches Capitol avenue, and that from there to the south it is steeper. There is no evidence to show that the grade or height of the sidewalk on Twelfth street has ever been fixed by ordinance, or that it is required to be the same as the street or the curb line, or that there is a general ordinance in force governing these points. If no ordinance controls and the proposed walk permits convenient public travel, it is not even a public nuisance.

The plaintiff argues that the sidewalk is a part of the street; that the title to the streets is held by municipalities in trust for the use and benefit of the public; that the easements of view and of light and air belong to every one owning property abutting on the street, and will be protected by the courts against illegal encroachments—citing *Davis v. City of Omaha,* 47 Neb. 836; *Jaynes v. Omaha Street R. Co.,* 53 Neb. 631; *Bischof v. Merchants Nat. Bank,* 75 Neb. 838, and *Chapman v. City of Lincoln,* 84 Neb. 534.

We are satisfied with the law as laid down in the cases cited, but we do not see that it aids the plaintiff. Eliminating from our consideration the ordinance passed by the city council, for the reason that the defendant is not now seeking to proceed under the terms of the same and in conformity therewith, the question that first presents itself is whether the plaintiff has shown such a special damage to himself as warrants him to maintain an action to abate a public nuisance. The real inquiry is not whether the council had power by ordinance to authorize the defendant to erect such an obstruction as is described in the ordinance, but whether the proposed construction of the sidewalk at a level instead of on a slope shall be restrained at the suit of

a private individual. We are all of opinion that the evidence fails to show any special damage to the plaintiff which will be sustained if the sidewalk is constructed as the defendant now proposes. As we read the answer and the evidence, it is not proposed to cover the walk, but only to vary its surface slope. There is nothing in the record to warrant a finding that the slight change proposed will interfere with plaintiff's light, or air, or view, or in any way damage his property, and so far as we can judge it will provide better access to the business portion of the city for him and his tenants. We have said repeatedly that the process of injunction cannot be availed of by a private citizen to abate a public nuisance, unless he suffers special or peculiar injury therefrom, aside from that suffered by the general public. *Kittle v. Fremont*, 1 Neb. 329; *Shed v. Hawthorne*, 3 Neb. 179; *Barton v. Union Cattle Co.*, 28 Neb. 350; *Hill v. Pierson*, 45 Neb. 503; *Letherman v. Hauser*, 77 Neb. 731; *Bischof v. Merchants Nat. Bank, supra*. No such special injury is established by the evidence, and, hence, the plaintiff is not entitled to maintain this action. If, at any future time, he suffer any special damages by reason of any interference with the public highway, this action will be no bar. While coming to the conclusion announced, we are of opinion that at the time this action was begun, and the restraining order issued, the defendant intended to follow the plan of construction set forth in the ordinance, and that the restraining order and temporary injunction were properly granted upon the showing made. The plan being changed, the injunction as finally granted was unnecessary.

The plaintiff was justified in beginning the action and should recover his costs in the district court, but the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.