IN RE ESTATE OF LIZZIE FRELING.
C. C. HAYNES, APPELLEE, v. ROY W. MATSON, EXECUTOR, APPELLANT.
FILED APRIL 18, 1930. No. 27136.

*W. A. Ehlers*, for appellant.

*B. N. Robertson, contra.*

HEARD before GOSS, C. J., DEAN, GOOD, EBERLY, and DAY, JJ., and FITZGERALD and HASTINGS, District Judges.

DEAN, J.

Lizzie Freling, a widow, died in Douglas county. By the terms of her will she devised her property to Eugene R. Freling, her legally adopted son, who was then 20 years of age. Roy W. Matson was named in the will as executor and, shortly after Mrs. Freling's death, he qualified as such executor and assumed the duties pertaining thereto. In his final report, which was approved by the county court, Matson alleged that the personal property was insufficient to pay the costs of administration and that the estate was without funds to pay certain claims theretofore allowed by the county court. C. C. Haynes, the undertaker in charge of the funeral and burial obsequies, is the plaintiff herein and he has filed objections to the above final report of the executor. Haynes' claim in the sum of $352.50 for funeral expenses was duly allowed by the county court and he rightfully contends, and it is clearly disclosed, that his claim is a valid and subsisting claim against the estate. Haynes charges that the report of the executor fails to disclose the disposition that was made of the real estate, or any part thereof. And, pursuant to Haynes' appeal in the district court, the order of the county court, approving the final report of the executor, was there reversed. Thereupon the following stipulation was entered into by the parties:

"It is stipulated by and between the parties hereto that the copy of the petition for discharge and the final account, in the estate of Lizzie Freling, deceased, and the copy of objections and exceptions to the petition for discharge and final account shall constitute the pleadings in this case; that the trial herein shall be upon such copies, in so far as they relate to the pleadings. It is further stipulated that both parties hereto may at any time apply to the court for leave to amend such copies either before or during the trial of the cause in the district court."

From the judgment rendered by the district court, the executor has prosecuted an appeal to this court.

The district court found and decreed that the estate in question consisted of an undivided one-half interest in a lot in an addition to the city of Omaha, and that $1,700 is the value of such interest. The court also found that Lizzie Freling inherited the interest in the lot from her husband and that her interest in such lot was subject to sale for the payment of debts contracted by her after her husband's death. And the court further found that Matson took charge of the real estate above described, which was the homestead of the Frelings, and that he retained charge thereof until May 18, 1929, which was the date of the trial, but that he had not accounted for the rental value of the undivided one-half interest belonging to the Lizzie Freling estate. Thereupon the court found and decreed that the executor was and is chargeable with $210 for such rental value from March 6, 1928, to the time of the trial.

Section 2832, Comp. St. 1922, provides:

"If the homestead was selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected, in the survivor, for life, and afterwards in decedent's heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will. In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife or either of them previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter: Provided, further, that in case the surviving spouse wilfully fails to provide a suitable home and maintenance for the minor children of the deceased during their minority or elects to partition the homestead premises, the homestead right of the survivor shall then terminate and the homestead premises shall then descend as other real property of which the decedent died seised."

The executor points out that the real estate, as the home-

stead of Lizzie Freling, is exempt from sale for her debts. We do not think that a lien was established as against her life estate arising out of her homestead right, by her simply contracting debts in her lifetime. Upon her death her life estate in the homestead became extinct, and the rights of her common creditors as well as to such homestead.

In *Judson v. Creighton,* 88 Neb. 37, this is said: "Where a homestead is selected during the lifetime of both husband and wife, and after the death of one the survivor resides upon the premises during his or her life, the real estate is not subject to sale for the satisfaction of the debts of either, which are not a lien thereon, nor to pay the costs of administering the estate of such survivor; but, if the title-holding spouse dies intestate, the title descends to his or her heirs, whether direct or collateral, exempt from such debts."

And in *McFarland v. Flack,* 87 Neb. 452, we held: "Upon the death of the owner of the fee in a homestead estate the same descends to the surviving spouse for life, and the remainder to the children of the owner of the fee title."

We do not think the record shows negligence on the part of the executor in failing to rent the premises. He testified, and it is not denied, that he was unable to find a tenant and that therefore the son of Lizzie Freling, after paying for the household furniture, lived in the home to protect it against fire, molestation, and destruction, under an agreement whereby he was to vacate the premises on three days' notice that a tenant had been procured. Clearly, the executor was not negligent in the premises and is not chargeable with the rental value of the home in question.

It also appears that when Freling died he was the owner of personal property consisting of an interest in a certain leather goods business which had been theretofore carried on under the firm name of Freling & Steinle. And the court found that Mrs. Freling inherited $1,012.28, as her interest in the partnership assets. The court also found that "no prudent attempt on the part of said executor has been made to collect and enforce or obtain possession of

said personal property or any part thereof or the proceeds thereof, or any interest therein, and that the said Roy W. Matson, executor, is chargeable with the value thereof."

The executor filed an application wherein he prayed that the court direct the administrator of the Eugene R. Freling estate to "show cause by an early date, to be fixed by the court, why the personal property belonging to the estate of Eugene R. Freling, to wit, an interest in the firm of Freling & Steinle, should not be sold and converted into cash." Subsequently, a proceeding in bankruptcy was instituted by Steinle, the surviving partner. W. A. Ehlers, attorney for the executor, testified that the assets of the business were sold, but that the returns therefrom were considerably less than the amount of the claims filed against the firm, and that there were no assets remaining from the firm that could be reduced to cash as belonging to the estate herein. And it also appears that, under a court order, $1,260 was directed to be paid to Lizzie Freling as widow's support during her lifetime by the Freling & Steinle firm, but that $540 thereof remained unpaid. It also appears that, after the death of her husband, Mrs. Freling had nothing to do with the affairs of the firm, but that such affairs were managed solely by the surviving partner.

The executor's contention is that Lizzie Freling's estate was a member of the Freling & Steinle partnership, and that it was not a creditor of Richard Steinle, the surviving partner, and that, since the business was bankrupt, the estate of Lizzie Freling could recover nothing. It does not appear to us that the estate of Lizzie Freling became a partner of the firm. The record appears fairly to disclose that the business was managed solely by Steinle as his own for several years after his partner's death, and that he paid the debts of the firm that were owing when Freling died. And Steinle appears thereafter to have conducted the business as his own without interference by, or participation in, or suggestion from, Mrs. Freling. In 1926, two years after Freling died, it appears from an inventory which was

prepared by the executor of the Eugene R. Freling estate that the decedent's interest in the partnership then amounted to $11,826.89. That Matson was closely and intimately associated with the affairs of the firm in question throughout his connection with the Lizzie Freling estate appears to be established. And the record also appears to disclose that Matson was justly chargeable with neglect, as found by the trial court, in failing to force the collection or an accounting of the claim in question from the estate of Eugene R. Freling in behalf of the Lizzie Freling estate.

In 2 Schouler, Wills (5th ed.) sec. 1209, it is said: "All the chattels of the deceased, wherever situated, are assets, if the representative, by reasonable diligence, considering the means of the estate already under his control, might have possessed himself of them."

An executor of the estate of a deceased person, owning both lands and personal property at the time of his death, is chargeable with the duty of acquainting himself with the title to such real estate and personal property and of enforcing an accounting thereof as against all persons who may be in adverse possession thereof or who may claim an adverse title or interest therein as against such estate.

In *Russell v. McCall*, 141 N. Y. 437, the court said: "While, upon the death of one of two copartners, the successor has the legal title to the firm assets, he does not become the full and absolute owner thereof, but holds them charged with a duty to pay the firm debts and to dispose of the residue for the benefit of himself and the estate of the deceased partner, and when, instead of gathering the assets, paying the debts, winding up the business and distributing the surplus, he misappropriates them and converts them to the use of himself and others, he is so far guilty of a breach of trust that a court of equity may give appropriate relief."

From a review of the record and the law applicable thereto, we conclude that the judgment of the district court must be and it hereby is reversed in so far as it relates to the sale of the homestead and the rental value thereof.

That part of the judgment is affirmed, however, wherein the court found the executor chargeable with the value of the Lizzie Freling estate's interest in the estate of Eugene R. Freling.

AFFIRMED IN PART, AND REVERSED IN PART.