## I. A. STROUP, Appellant, v. W. S. RAUSCHELBACH, Respondent.*

### In the Kansas City Court of Appeals, May 5, 1924.

1. **INJUNCTION: Nuisances: Adjoining Landowners: Evidence Held Sufficient to Sustain Decree That Erection of Fence was Necessary to Protect Owner's Family from Offensive Conduct.** In an action in equity to abate a high board fence between adjoining lot owners on the ground that it obstructs the view from plaintiff's property and prevents circulation of air thereto, evidence *held* to sustain decree that fence was not built maliciously, but erection thereof was made necessary to protect defendant and his family from offensive conduct of plaintiff and his family.

2. **TORTS: Where no Right is Infringed upon, no one is Injured, and in Such Case Motives are Immaterial.** If a right is not infringed upon, no one is injured or damnified, legally speaking, and in such case motives are not material.

3. **————: Adjoining Landowner: In Absence of Statute, Action Cannot be Maintained by One Landowner Against Another for Cutting Off View.** No action can be maintained by one property owner against another for cutting off his view, unless a statute confers such right.

---

*Headnotes 1. Adjoining Landowners, 1 C. J., Section 86; 2. Torts, 38 Cyc., p. 435; 3. Adjoining Landowners, 1 C. J., Section 79.

Appeal from Circuit Court of Morgan County.—*Hon. Henry D. Westhues,* Judge.

AFFIRMED.

*John J. Jones* and *Roy D. Williams* for appellant.

*Embry & Embry* and *Richard H. Woods* for respondent.

TRIMBLE, P. J.—This is an action in equity brought to abate a high board fence between adjoining lot owners on the ground that it obstructs the view from plaintiff's property, and prevents the circulation of air thereto. The petition further alleges that said fence is not ornamental, is not useful, since a fence three or four feet high would answer every purpose, and that it was erected solely for the purpose of injuring plaintiff and was without advantage to defendant, and is a continuing nuisance.

Plaintiff and defendant own and reside upon adjoining lots in the town of Versailles, Missouri. The lots are about seventy-five feet front by 150 feet in depth; and they front west. Plaintiff's lot is north of defendant's.

Plaintiff's residence is located about six feet from the South line of his lot, which, of course, is the divisional line between the lots.

Before the erection of the solid board fence complained of, the parties had, by agreement, erected on said divisional line a woven wire fence about eight feet high, beginning at a point forty feet east of the west or front lines of said lots and running east a distance of forty-seven feet. (Apparently this fence began at a point about even with the southwest corner of plaintiff's house, though the record does not explicitly so state.) At some unnamed point (possibly at the east end of the fence), on or near to said divisional line the north side of defendant's garage stood, and it was a little higher than the fence.

A few inches south of said wire fence, and wholly on his own lot, defendant erected a solid board fence eight feet high, beginning at the point where the wire fence began and running back the same distance, but he afterward took away the easternmost twenty feet thereof. This board fence is six feet nine inches south of plaintiff's

porch on the south of his house. It is this board fence that plaintiff seeks to have removed as a nuisance.

The court heard the evidence and, with no declarations of law or findings of fact being requested, rendered a decree in which he found that the defendant did not build the fence maliciously but that the erection of the same was made necessary to protect him and his family from the offensive conduct of plaintiff and his family, whereupon judgment was entered for defendant, dismissing plaintiff's bill. Plaintiff has appealed.

We cannot interfere with the learned chancellor's disposition of the case. Plaintiff's theory is that the fence was erected solely for the purpose of maliciously injuring plaintiff, being the outcome of a quarrel, and that the fence could be of no possible benefit to defendant. He urges that no one has a right to use his property to injure another unless the use is either beneficial to him or to his property, and cites in support thereof Givens v. Van Studdiford, 4 Mo. App. 49; S. C., 72 Mo. 129; Burke v. Smith, 37 N. W. 830; Flaherty v. Moran, 45 N. W. 381; Kirkwood v. Finnegan, 55 N. W. 457. Also that when the use is willful, actuated solely by malice, and of no possible benefit to the owner of the property, if there is an injury to the adjoining owner, it becomes a nuisance and a court of equity will interfere, citing the above authorities and also Medford v. Levy, 8 S. E. 302; Quincy v. Jones, 76 Ill. 231. It is not absolutely necessary to decide this precise question since the court found that the fence was not built maliciously but for the purpose of protecting defendant's family. The evidence is ample to show that the purpose of the fence is to screen the back porch of one residence from the back porch of the other, and there is evidence tending to show that this was rendered necessary by the unseemly and improper actions of plaintiff in attending to one of the calls of nature in full view of defendant's family, besides other annoying things done by plaintiff's twelve-year old son, among them, throwing a flashlight into the windows and into

the aged mother's face. In Medford v. Levy, supra, cited by plaintiff it is said that where such a situation prevails, equity will not interfere since one who comes into a court of equity must come with clean hands.

There is nothing in the way of a public nuisance alleged in the petition or shown in the evidence, and the case of Givens v. Van Studdiford, supra, is, therefore, clearly not in point.

We are not warranted in disagreeing with what the learned chancellor says the evidence shows; not only because the evidence is in such a condition that we would defer in great measure to his better opportunities to judge and weigh the evidence, having seen and heard the witnesses, but also because plaintiff says defendant's erection of the fence arose out of a political quarrel had between them in 1910, or fourteen years ago, which was ten years before defendant bought his property, and plaintiff's own evidence shows that after defendant came there they were on such good terms that the wire fence was put up as a partnership fence by one of them, the other agreeing to pay his proportionate part of the cost. In addition to all this, the manner of certain members of plaintiff's family in testifying was apparently not such as to impress the chancellor with its fairness and impartiality.

In addition to the foregoing, it may be observed that the petition does not base any right to light and air on prescription, contract, covenant or grant. Hence it is not seen how a cause of action has been stated based on such deprivation. [2 Cooley on Torts (3 Ed.), p. 1506.] And this too, without regard to defendant's motives. If a right is not infringed upon, no one is injured or damnified, legally speaking, and in such case motives are not material. [Mahan v. Brown, 13 Wend. 261.] It would seem, however, from plaintiff's avowed contention or claim, that it was not a question of light and air, but it is on the alleged element of malice on defendant's part that plaintiff bases his right to relief. Again, it would seem

that the fence did not shut out light and air but did interfere with plaintiff's *view* or *prospect*. No action can be maintained by one property owner against another for cutting off his *view*, unless a statute confers such right. [19 Am. & Eng. Ency. of Law (2 Ed.), p. 121.]

It follows that under any view of the case, the learned chancellor's decree must be affirmed. It is so ordered. All concur.