THE ANTHONY CARLIN CO. *v.* THE HALLE BROTHERS CO. ET AL.

*Municipal corporations—Streets and alleys—Surface, light, air and view dedicated to public—Abutting owner cannot appropriate to own exclusive use—City cannot grant greater rights than it possesses—Constructing bridge connecting properties across street, enjoined.*

1. One cannot appropriate to his own exclusive use portion of street dedicated to public use, whether it be surface of street or light and air above it.
2. City cannot, by municipal legislation or otherwise, grant any greater rights in road than it possesses, which is only fee in trust for public use subject to property rights in street of abutting owners.
3. Construction of bridge across street connecting properties of defendant *held* properly enjoined, where rights of abutting owners to air, light, view, and privacy would be impaired thereby; it being no defense that abutting properties might be enhanced in value.

(Decided September 4, 1926.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Mooney, Hahn, Loeser & Keough,* for plaintiff and cross-petitioner.

*Messrs. Henderson, Quail, Siddall & Morgan,* for Halle Bros. Co.

*Mr. Carl F. Shuler,* director of law, for William S. Ferguson, director of public service, and William D. Guion, commissioner of buildings in and for the city of Cleveland.

FARR, J. This cause is here on appeal. The action below was to enjoin the city of Cleveland from issuing a building permit and the Halle Bros.

Company from constructing a bridge to connect its present department store on the south side of Euclid avenue and north side of Huron road with their new building to be erected on the south side of Huron road.

The cause came on to be heard in the court below and resulted in a judgment for the defendant Halle Bros. Company, and from the decree so entered an appeal was perfected in this court. The facts incident and necessary to a proper understanding and determination of the issues are briefly as follows: On the 29th day of March, 1926, the council of the city of Cleveland passed an ordinance permitting the Halle Bros. Company to connect with a bridge its present nine-story building, fronting on one side on North Huron road, with a new six-story building to be erected on the south side of Huron road and Prospect street; such bridge to be over Huron road. The ordinance carried the necessary provisions with reference to such permits as are required by the rules and regulations of the department of public service, and the requirement that the bridge be so constructed as to meet the approval of the commissioner of engineering and construction and the commissioner of buildings, and such other requirements as were considered necessary by the city, including the right of revocation, all of which was satisfactory to the Halle Bros. Company. Before the ordinance became effective on May 9, 1926, this action was brought below for the purpose above mentioned.

Huron road is 99 feet wide, a 55-foot roadway with sidewalks 22 feet wide on either side. It is a main thoroughfare in the center of the business

OHIO APPELLATE REPORTS. 117

App.]    Anthony Carlin Co. *v.* Halle Bros. Co.

district of the city of Cleveland, beginning at the intersection of Euclid avenue and East Fourteenth street and running thence in a southwesterly direction from Euclid to East Ninth street; thence west to Ontario street. The contemplated bridge is to be not more than 28 feet wide; is to connect the fourth and fifth floors of the present building with the fourth and fifth floors of the new building; the height of the bridge proper is to be about 25 feet, with a clock tower 37½ feet above the lowest point of the bridge, which is to be two stories high, the first floor to be 10 inches thick and the second 8, the structure to be supported by twelve columns of sufficient size extending up through the bridge, but without foundation in the street. Below the columns the materials will be of glass, wood, and terra cotta, and this part of the structure is to be 20 feet deep at the property line and 10 feet at the center. The roof is to be of glass and terra cotta, and to be 4 feet deep; the clock will be 10 feet in diameter, and the clock tower will be 11 feet above the highest point of the bridge proper. The floor of the bridge is to be about 22½ feet wide, the bridge to contain about 50,000 cubic feet and to have a clearance of not less than 55 feet at the center, 53 feet at the curb, and 38 feet at the side lines of the street. The relative locations of the properties involved here are as follows: The defendant Halle Bros. Company owns and controls 286 feet on the north side of Huron road, now occupied by its department store, and has a frontage of 193 feet on the south side, to be occupied by its new building.

Plaintiff's property is situated on the southerly side of Huron road, at the southwesterly corner of

East Fourteenth street, running thence westerly 232 feet to within about 300 or 335 feet of the bridge. The property of the defendant the Medic Realty Company, cross-petitioner, extends for 315 feet on the same side of Huron road and to within 30 feet of the bridge. Plaintiff's property consists of Hotel Euclid, the Hermitage Hotel, and, next west, the Euclid Square building. These buildings are used for hotel and commercial purposes such as stores, etc., are several stories high, and have upon them signs, electric and otherwise. The property of the Medic Realty Company, cross-petitioner, consists of three parcels; the first, and adjacent the proposed new Halle building on the west, is the Stratford Hotel, four stories high, containing 32 family suites, next to which is a 10-foot driveway, next west is the three-story Huff building, with stores below and rooms above, and next comes the six and seven story Osborn building, with stores below and about 200 suites above, occupied by doctors and dentists. On the outer walls of these buildings are numerous signs. The contemplated bridge is concededly to be used by patrons and employees of the Halle Bros. Company store in travel from one building to the other, and for transporting goods, merchandise, etc., between the buildings, and it is claimed by plaintiff, and the cross-petitioner, who are the only complainants, that the bridge if constructed will interfere with their incorporeal rights of light, air, and view, decrease the value of their properties, and lessen rental values.

The record discloses testimony both for and against the proposition. Meisel says in behalf of plaintiff and the cross-petitioner that the proposed

bridge will obstruct the light coming into the windows of the Stratford apartments, will obstruct the view of signs on some of the properties involved, and render the suites in the Stratford and Osborn less available for rental purposes; that it will interfere with the free circulation of air and lessen the privacy of tenants occupying suites in the Stratford, in that persons crossing the bridge may readily look into the windows of the Stratford apartments, and that the same situation will obtain if a new building be erected on the Stratford and Huff properties by the 31st day of March, 1931, as it is claimed will be done. Each testifies as to obstructed view by the bridge at different points on Huron road, which include the Carlin Company property. Carlin says that the bridge will obstruct the view of signs and interfere with the free circulation of air, create shadows, and decrease the rental values of the properties involved. Spracklin says that the bridge will affect plaintiff's and cross-petitioner's properties unfavorably; that it will interfere with the privacy of tenants in the Stratford and will obscure the view of signs. McGwinn, for the Halle Bros. Company, says that the bridge will increase the value of real estate on the south side of Huron road, but he admits, on cross-examination (Record 135), that the bridge will have some effect on the passage of air and air currents up and down Huron road. He says: "I presume it will have some effect on the air." At page 141 he says, "I think that it would cast a shadow," and when asked whether it would interfere with the free radiation of light on the street he answered, "I think so," and, at page 142, he says, "I think there would be shadows

120    OHIO APPELLATE REPORTS.

Anthony Carlin Co. *v.* Halle Bros. Co.    [23 Ohio

cast." He also admits at page 147 that it will obstruct the view of signs. Morris, also for the Halle Company, admits that the bridge will cast some shadow, obstruct some view, and interfere with the circulation of air to some extent. Dr. Nassau says that no shadow would be cast west of the bridge. Helper says that the structure would not be detrimental to other properties on the street, although he admits that he had previously signed a protest. McMichael says that he has examined many bridges in other cities, but that this is the first to be proposed in Cleveland for over a street. Mr. Halle says that the bridge would enhance property values, and be an advantage to his company. Powell says that the new building with the bridge will enhance property values on Huron road.

The foregoing is briefly what the record discloses by the testimony on both sides as to air, light, and view, and a full examination of the record leads to the conclusion that the construction of the bridge as above described would necessarily interfere with the air, light, and view of the properties involved, and it is noteworthy that a number of witnesses on both sides so testify. What therefore are the relative rights of these contending parties?

It is held in *Callen* v. *Columbus Edison Electric Light Co.*, 66 Ohio St., 166, 64 N. E., 141, 58 L. R. A., 782, that the title which a municipal corporation acquires to streets dedicated by a proprietor who subdivides lots for sale is held for the use of the public for street purposes, therefore the fee of the street passes to the municipality in trust for such purpose, but for no other. It is also held in the same case that the owner of a lot abutting on

OHIO APPELLATE REPORTS.                121

App.]        Anthony Carlin Co. v. Halle Bros. Co.

such street has a property interest in the street in front of his lot which cannot be taken against his will except upon the terms provided in the Constitution; that is, that compensation first be made. But ingress and egress are not the abutter's only rights. When the strip of land known as Huron road became a public thoroughfare, the abutters on it, and their successors in title, were entitled to the benefit of light, air, and view, because these intangible rights are as much a part of a street as the street itself. These rights are recognized in *Village of Port Clinton* v. *Fall*, 99 Ohio St., 153, 124 N. E., 189, in the first proposition of the syllabus, as follows:

"1. The right to the circulation of air, the passage of light, and an unobstructed view over a street, together with the relative harmony of said street with the abutting lots, is an incorporeal hereditament attaching to such abutting lots, and is property within the meaning of Section 8888, General Code."

Therefore the dedication of this street embraced not only the surface of the ground but the light, air, and view above, and an individual would have no more right to obstruct the natural penetration of light and the free circulation of air above than to obstruct the surface of the street; and it is well settled that an individual cannot appropriate to his own exclusive use a portion of a street dedicated to the public use. *Chicago Dock & Canal Co.* v. *Garrity*, 115 Ill., 155, 3 N. E., 448. Nor could the city of Cleveland by any process of municipal legislation, or otherwise, grant any greater rights in Huron road than it possessed, which, as above stated, is only a fee in trust for public uses, that

is for all uses as a street, subject always to the property rights in the street of abutting lot owners. *Elster* v. *City of Springfield,* 49 Ohio St., 82, 96, 30 N. E., 274.

The right to construct such bridge over a street was not denied in *Kellogg* v. *Traction Co.,* 80 Ohio St., 331, 88 N. E., 822, 23 L. R. A., (N. S.), 158, 17 Ann. Cas., 242, but was exercised only upon the conditions that its supports would not rest in the street and that its construction would not interfere with the light and air of "adjoining" and "abutting" owners, which latter term in the instant case would especially include the Medic Realty Company. The syllabus of the above case reads as follows:

"The owner of lots abutting on opposite sides of the street may, under a license or permit from the city council, revocable at its pleasure, construct an overhead bridge for the purpose of transporting freight over the street and relieving the street of a serious obstruction to or interference with traffic along the street, the bridge being so constructed that its supports will not be in the street and so that it will not interfere with the light and air of adjoining abutting owners."

It should be observed that the above case of *Village of Port Clinton* v. *Fall* includes "circulation of air," the "passage of light," an "unobstructed view," and the "relative harmony of said street with the abutting lots," or, in other words, and essentially, air, light, and view. The action was by a general taxpayer, but even in that case the court recognized the rights of adjoining owners.

The basic facts of the foregoing cases are not the

precise facts of the instant case, but the principle announced as to air, light, and view is fully applicable here and practically determinative of the vital issue. It is not apparent from an examination of the syllabus how far the case of *Ghaster* v. *City of Fostoria* [115 Ohio St., 210, 152 N. E., 651], O. L. B. & R., June 14, 1926, is applicable here, because the syllabus only is available; therefore a discussion of same will not be attempted. It is said that the case of *Offutt on Behalf of City of Cincinnati* v. *Roth Packing Co.*, 11 C. C., (N. S.), 357, 21 C. D., 58, sustains the contention of the Halle Bros. Company, where, in the syllabus, it holds:

"An injunction will not lie on the petition of a property owner against the connecting of buildings on opposite sides of the street by a bridge twenty feet above the pavement, where the ingress and egress of the plaintiff is in no wise impaired, and the injury which he will sustain, if any, is not different in kind from that suffered by the public at large."

But, scarcely so, for the facts are somewhat different, in that it is stated in the opinion, at page 358, that her "property is some distance removed from the property of the defendant, * * * and does not nor can it, under the allegations of the petition, abut upon the portion of the street which she claims is obstructed."

The property of the Medic Realty Company is within about 30 feet of the line of the bridge. The first part of the opinion in above case discusses the validity of the ordinance granting the right, and holds same valid. Very brief reference is made to air, light, and view as an easement, and

it is held that such easement does not exist in Ohio by prescription, which is not the instant case. The substance of the syllabus is that injunction is not available to a property owner to prevent the connecting of buildings on opposite sides of a street by a bridge 20 feet above the pavement where ingress and egress is in no wise impaired and the injury is not different in kind from that suffered by the public at large, while in the instant case it is clear that the plaintiff and cross-petitioner will suffer inconvenience different in kind and not simply in degree from that of the general public, and especially is that true of the Medic Realty Company because of the proximity of its property, which a number of witnesses on both sides say will be affected so far as air, light, and privacy are concerned. However, the case last above mentioned, decided February 29, 1908, is not in any event authoritative here for the reason that the above case of *Village of Port Clinton* v. *Fall*, 99 Ohio St., 153, 124 N. E., 189, decided February 11, 1919, announces a somewhat different principle and is controlling here.

It is of interest that principles somewhat similar to those announced in the foregoing Ohio cases have been announced frequently outside this jurisdiction, notably in *Field* v. *Barling*, 149 Ill., 556, 37 N. E., 850, 24 L. R. A., 406, 41 Am. St. Rep., 311, which holds that an ordinance granting to private parties the right to construct for their own use a bridge over a public alley is invalid, since cities hold the fee of the streets in trust for public uses only; that where land is platted by the owner into lots, blocks, streets, and alleys, and lots are sold by him with reference to the plat, the

OHIO APPELLATE REPORTS. 125

App.]      Anthony Carlin Co. v. Halle Bros. Co.

purchasers acquire, as appurtenant to the lots, the right to have the adjoining streets and alleys kept clear of obstructions both on and above the ground; and that where a proposed obstruction in a public alley inflicts special damage on the owner of an adjoining lot, he is entitled to an injunction restraining its erection.

The case of *Field* v. *Barling* is carefully considered and well upon the point here involved. Another case of interest in this connection is *Barnett* v. *Johnson,* 15 N. J. Eq., 481, where it is held, in three propositions of the syllabus, as follows:

"Two classes of rights, originating in necessity, spring up coeval with every highway; the first relates to the public passage; the second, equally perfect, but subordinate to the first, relates to the adjacent owners. Among the latter is that of receiving from the public highway light and air.

"Owners of land adjacent upon the Morris canal have the privilege of receiving from it light and air; provided, in so doing, they do not interfere with the most convenient use of the canal as a public highway, or with any of the regulations of the directors made *bona fide* for that purpose.

"The complainant owned a lot in the city of Newark, adjacent upon the line of the Morris canal, and built a house touching the line, with windows facing the canal. Held, that this court will restrain the defendant, holding under the company, from erecting a building over the canal so as to shut up the complainant's windows."

Numerous other cases and authorities announce practically the same principle as the foregoing, and the case of *Kinnear Mfg. Co.* v. *Beatty,* 65

126 OHIO APPELLATE REPORTS.

Anthony Carlin Co. *v.* Halle Bros. Co. [23 Ohio

Ohio St., 264, 62 N. E., 341, 87 Am. St. Rep., 600, is of interest by way of analogy. The exhaustive briefs of both parties have been found helpful in the attempt to reach a correct conclusion, but it would not be profitable to discuss all of the cases and authorities cited.

It is also urged that the city council failed to submit a copy of the ordinance involved here to the city plan commission, authorized by Section 87 of the city charter, and as required by Section 213 of the Municipal Code; that therefore the council had no right to legislate on those matters which are within the province of the city plan commission; and that therefore the legislation is invalid. *Campbell* v. *City of Cincinnati,* 49 Ohio St., 463, 31 N. E., 606; *Swindell* v. *State,* 143 Ind., 153, 42 N. E., 528, 35 L. R. A., 50; 2 Dillon on Municipal Corporations (5th Ed.), Section 576, note. This issue is not of vital importance for the reason that the bridge has not been built, and, if necessary, the city could begin again and take the steps required by the foregoing provisions.

In the light of the testimony disclosed by the record, it is clear that the incorporeal rights of plaintiff, and of the cross-petitioner, especially, that is, the intangible rights of air, light, and view, would be impaired by the construction of the bridge, and as to the cross-petitioner the additional right of privacy, which especially involves the nearby "Stratford" apartments and therefore becomes a matter of importance. It is no defense that these properties might be enhanced in value by the bridge. 1 Pomeroy's Eq. Rem., (2d Ed.), Section 508; 32 Corpus Juris, 140.

It follows therefore that a decree should be

entered for plaintiff and the cross-petitioner, as prayed for, and it is so ordered.

*Judgment for plaintiff and cross-petitioner.*

RICHARDS and PARDEE, JJ., concur.

RICHARDS, J., of the Sixth Appellate District, PARDEE, J., of the Ninth Appellate District, and FARR, J., of the Seventh Appellate District, sitting in place of Judges LEVINE, VICKERY, and SULLIVAN, of the Eighth Appellate District.