**FECHHEIMER v. LAKENAN et al.**

No. 868.

District Court, W. D. Missouri, W. D.
Nov. 17, 1931.

Decree affirmed in 64 F. (2d) 83.

Miller, Winger, Reeder, Barker, Gumbiner & Hazard, of Kansas City, Mo., for plaintiff.

Cooper, Neel, Kemp & Sutherland and Ryland, Stinson, Mag & Thomson, all of Kansas City, Mo., for defendants.

OTIS, District Judge.

Plaintiff is the owner of a certain plot of ground and a two-story business building abutting on Main street, on the west side thereof, in Kansas City, Mo., in one of its most busy retail districts. Main street runs in a north and south direction and is intersected north of plaintiff's building by Tenth street and south thereof by Eleventh street. Plaintiff's building is used for retail business purposes (the retail sale of shoes). On the plot of ground immediately south of plaintiff's plot is a theater building (for moving and sound pictures) on a plot of ground owned by the defendant Lakenan leased by long-term lease to the corporate defendant.

Over the entrance to the theater the corporate defendant has a canopy, of permanent construction, and in connection with this canopy, around and above it, various electrically lighted signs. The canopy extends across the sidewalk at such a distance above the sidewalk as not to interfere with use of the sidewalk by pedestrians.

Complaining that the canopy and signs obstructed a view of plaintiff's store building and the free access of light and air thereto, the plaintiff filed its bill in equity praying that defendants be enjoined from the further erection of any canopy and signs and for the removal of those presently maintained.

In addition to a general denial, the following defenses are set up in the answer by the corporate defendant: (1) That it became the owner of a ninety-nine year lease of the theater June 15, 1926, when the canopy and signs had already and for several years been erected by permission of a city ordinance and that the plaintiff is now, by silence and long acquiescence in the maintenance of the canopy and signs, estopped to complain; (2) that the plaintiff purchased his property May 15, 1923, after the erection of the canopy and signs, and that if they depreciated the value of the property purchased by plaintiff he received compensation for that depreciation in reduction of purchase price at the time of his purchase; (3) that this action is barred by the statute of limitations; (4) that the plaintiff has been guilty of laches; (5) that the plaintiff is not a real party in interest and that facts are not stated in the bill entitling the plaintiff to equitable relief.

1. The evidence at the trial largely was directed to a showing of the physical facts, although there was evidence also touching other matters. Numerous photographs from

varying viewpoints were offered, as well as drawings made and explained by engineers. At the joint and repeated requests of the parties I personally visited the scene and made several observations from different points both in the daytime and at night.

Plaintiff's building, occupied by its tenant the Robinson Shoe Company, is of two stories. It has been used for the retail sale of shoes for many years (the evidence indicates it has been used for that business more than twenty-five years), and the building has been leased by the plaintiff to the present tenant (the plaintiff is a stockholder and was one of the incorporators of the tenant company) for period extending several years into the future.

The first floor front of the building is entirely made up of plate glass windows behind which are displayed exhibits of goods sold by the shoe company. Here are several signs, some in metal letters, some electric, indicating the nature of the tenant's business and giving the tenant's name. The first floor window displays are attractive and undoubtedly of great advertising value. The slightest glance toward them either in the day or night immediately reveals the nature of the business conducted in the store.

. Above the first floor are two signs, laid flat against the building, the first of which is at about the dividing line between the floors, and the second of which is at the very top of the building. The first is in the words: "THE ROBINSON SHOE COMPANY." The second is in the words: "THE BIG SHOE STORE." Each is in large letters extending across the entire front of the building and capable of being seen and read for several blocks. There are no window displays of any kind on the second floor, and no one observing the windows of the second floor would learn anything therefrom as to the nature of the business conducted in the building.

Now the effect of the canopy and signs upon the view of persons on the street is this: They have no effect whatever of intercepting a view of the first floor of the plaintiff's building so far as its display windows are concerned. The canopy is not supported by pillars from below, but by chains from above, so that there is not even the slight interception which might be caused by such supports. The only effect caused by the canopy and signs upon the view of anything on plaintiff's building which advertises the business carried on in that building is with respect to the two signs described in the preceding paragraph. I am speaking, of course,

of any direct effect. I suppose and at the trial ruled that such an indirect and purely psychological effect as might result from the greater brilliance of the theater front, proceeding from its highly illuminated canopy and signs, was not to be considered. If it were considered it certainly would be offset by the fact that thousands drawn to the theater see the show windows in plaintiff's building who otherwise would not at all see them.

As to the two upper signs on plaintiff's building, the view of them is cut off by the canopy and signs above and around the canopy from only a few points from which otherwise they would be visible. Being flat against the building, it is obvious that they are best seen from in front or from across the street. This view is in no way or only to the very slightest extent obstructed. The pedestrian proceeding northward on the same side of the street as plaintiff's building could not see the two signs on that building if the theater canopy and signs were entirely absent until he was within a few feet of the building. For a short distance after otherwise he could see these signs his view of them is cut off by the canopy, but in that distance in which his view is intercepted he has a full and uninterrupted view of the plaintiff's first floor show windows, of the displays therein, and of the electric and metal signs on and about the windows. It appeared in the testimony, and there was no denial of it, that until a few days before the trial such a pedestrian also would have had a full view of lighted showcases advertising the business conducted in the plaintiff's building and which were set out in front of the plaintiff's building by plaintiff's tenant as appurtenances of the building. Just before the trial they were removed.

There was evidence that at a time prior to the filing of the plaintiff's second amended bill upon which the case was tried the corporate defendant frequently erected above its canopy certain large temporary signs and some of the photographs in evidence show these signs, but it was clear that this practice had been finally abandoned long before the trial, and therefore there is no reason for considering the effect of signs of this character.

There was conflicting evidence as to the effect of the alleged obstruction of view and prospect upon the rental value of plaintiff's property. Certain witnesses testified that that value was depreciated; others testified it was not depreciated. There is no question that rentals on both sides of the theater have

in fact continuously increased since the canopy and signs were first erected, but, since many elements enter into rental value, that fact may not be said conclusively to negative plaintiff's contention in this regard.

Some evidence was introduced on behalf of plaintiff for the purpose of showing that from the second floor of plaintiff's building the prospect outward and southward was somewhat intercepted by the corporate defendant's canopy and sign. That that is true, of course, is obvious. It was quite clear, however, that that fact was of no practical at least of no present practical significance.

A fair picture of the whole situation as shown by the evidence will not be had if it is thought that the canopy over the entrance to the Royal Theater is the only one on Main street. The fact is that looking southward from plaintiff's building one sees in a distance of three or four blocks seven or eight canopies of permanent construction extending entirely across the sidewalk. There are canopies before at least three other theaters and they too have electric signs around them and above them. In addition to these permanently constructed canopies, almost every place of business on the street in this retail district has an awning which, when open and extended, reaches out over about one-third of the width of the sidewalk. The plaintiff's building itself has a permanent canopy extending a short distance (about twelve inches) from the building line beneath which is an awning which, when extended, completely shuts off the view of adjacent building fronts from persons under or approaching the awning. This awning, like the others, extends about a third of the distance across the sidewalk space.

Besides the evidence bearing on the physical facts and their effect, there was evidence as to other matters which I think it unnecessary here to summarize.

No one connected with the business of plaintiff's tenant testified in the case. The plaintiff himself apparently was disinclined to testify and finally did testify only as to a single matter, to wit, that he was the present owner of the building.

2. From the evidence introduced at the trial, I make the following findings of facts:

1. I find the fact to be that the plaintiff is the owner in fee of the real estate described in the plaintiff's bill and occupied by the Robinson Shoe Store referred to in the evidence.

2. I find the fact to be that the defendant Robert F. Lakenan is the owner in fee of the real estate described in the plaintiff's bill and occupied by the Royal Theater referred to in the evidence.

3. I find the fact to be that the plaintiff acquired title to the property referred to in finding of Fact No. 1 in 1923.

4. I find the fact to be that several years before the institution of this suit the plaintiff leased the real estate owned by him to the Robinson Shoe Company (to conduct thereon a retail shoe business), and that it is now and at the time of the filing of the bill herein was occupied by the Robinson Shoe Company, and that the lease has yet several years to run.

5. I find the fact to be that the defendant Robert F. Lakenan on May 31, 1913, executed a ninety-nine year lease to the real estate referred to in finding of fact No. 2, and that the corporate defendant is now and at the time of the filing of the bill herein was the assignee of that lease.

6. I find the fact to be that the corporate defendant has and now maintains and at the time of the filing of the bill herein did have and was maintaining in front of the Royal Theater a canopy and above and around that canopy certain signs; that the canopy aforesaid extends from the property line outward over and above the sidewalk. And I find the fact to be that the canopy and signs above and around it are electrically illuminated day and night.

7. I find the fact to be that the northward view of that part of the Robinson Shoe Store which is above the show windows on the first floor thereof of pedestrians on Main street who may be south of the Robinson Shoe Store and of others than pedestrians who may be south of the Robinson Shoe Store to some extent is interfered with and obstructed by the canopy and signs in front of the Royal Theater. And I find the fact to be that the view southward along the west side of Main street of persons on the second floor thereof also to some extent is interfered with and obstructed by the canopy and signs aforesaid. And I find the fact to be that the canopy and signs do not at all obstruct the view of the first floor show windows of the Robinson Shoe Store.

8. I find the fact to be that while the view of persons on Main street who are south of the Robinson Shoe Store is as to the second story of that store and signs thereon somewhat and from certain points intercepted as aforesaid by the canopy and signs in front of the Royal Theater, that interception of view is immaterial and insubstantial. I find also that the prospect from the second

floor of plaintiff's building is intercepted only immaterially and insubstantially. The view of the second floor signs on plaintiff's building from the sidewalk on the opposite side of the street is not intercepted except to a most immaterial extent, nor is the view of persons on the roadway intercepted except also to the most immaterial extent. The view of persons on the sidewalk on the same side of the street as the plaintiff's building is intercepted by the canopy and signs, as such persons proceed northward on that sidewalk, for a distance of not more than one hundred and fifty feet or as they immediately approach and as they pass under the canopy. During all the time that the view of upper signs on plaintiff's building is thus intercepted, the first floor show windows in plaintiff's building and the signs thereon and thereabout are in full and unobstructed view.

9. I find the fact to be that the rental value of plaintiff's property has not been and is not decreased by reason of the canopy and signs on the theater building referred to in evidence.

3. That the owner of property abutting on a public street has an easement to a right of unimpeded egress from and access to his property to and from the street and to light and air therefrom is unquestionable. 29 Corpus Juris, 547. That he has also an easement to prospect and view is not so universally conceded. However, that he has such an easement is supported by the preponderance of decided cases. 27 Amer. & Eng. Ency. of Law, 162. Illustrative cases are the following: First Nat. Bank of Montgomery v. Tyson, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; Stetson v. Faxon, 19 Pick. (Mass.) 147, 31 Am. Dec. 123; Bischof v. Merchants Nat. Bank, 75 Neb. 838, 106 N. W. 996, 5 L. R. A. (N. S.) 486; Davis v. Spragg, 72 W. Va. 672, 79 S. E. 652, 48 L. R. A. (N. S.) 173; Krueger v. Wisconsin Tel. Co., 106 Wis. 96, 81 N. W. 1041, 50 L. R. A. 298; World Realty Co. v. City of Omaha, 113 Neb. 396, 203 N. W. 574, 40 A. L. R. 1313; Brown-Brand Realty Co. v. Saks & Co., 126 Misc. 336, 214 N. Y. S. 230.

Among the courts holding the property owner does have an easement of prospect and view there is contrariety of opinions as to a right to equitable relief. It is said in 13 Ruling Case Law, at page 234: "There is a conflict as to whether or not the view of a building from the street on which it stands, when considered with reference to its value as a means of attracting the attention of passers-by in the street to goods displayed in the windows, is an easement of such nature as to entitle the owner or tenant of the building to the protection of a court of equity. Some courts hold that interference with the easement of view under such circumstances constitutes special damage which will entitle the owner of a building to an injunction while others deny the right to injunctive relief."

It is not necessary in this case to decide which of these conflicting views is the right one. It is sufficient to say that all the courts, or at least most of them, holding there may be equitable relief where the easement is interfered with, restrict that right to those cases in which there is a showing of serious injury and damage as distinguished from cases where the injury by reason of the interference is speculative or immaterial. Learned counsel for the plaintiff in the oral argument frankly said he would not contend that every canopy, every awning, every sign could be prevented by an adjoining owner, although obviously every such thing to some extent does obstruct both view and prospect.

For the purposes of this case I accept the view of plaintiff's counsel as a correct interpretation of the applicable law. Respectable authorities support that view. In accordance with it, so far as the present question is concerned, I would rule that if the corporate defendant's canopy and sign did shut off the view of persons on the streets from the display windows in plaintiff's business building or materially obstruct a vision of properly located signs on plaintiff's building advertising the business therein conducted, then their continued maintenance should be enjoined, and that whether or not they had been authorized by the municipal authorities. Clearly a municipality cannot authorize a nonpublic use of a street which will destroy another's property. But I think that such a slight obstruction of view as the facts here show does not warrant the equitable relief which plaintiff seeks.

I do not overlook the contention made by plaintiff that even though there be no present damage the situation may change. For example, display windows may be put on the second floor of his building for the present or another and a separate business. Again, another building may be erected by the plaintiff, as an office building, and the matter of prospect may become of practical significance. The plaintiff questions whether when the situation is so changed it might not be held that some right had been acquired by the owner of the adjoining property from the mere lapse of time. But it seems clear to me that the plaintiff will then have his

right to equitable relief and that it will not have been lost because not timely urged. That this proceeding has been instituted by him and has failed is sufficient to defeat a claim of laches in the future or of prescriptive right on the part of plaintiff's future adversary.

I should add finally that it is gravely to be doubted whether the plaintiff by reason of the long-time lease he has given the Robinson Shoe Company has any such present interest in this matter as entitles him to relief even if otherwise he would be entitled thereto. I have preferred, however, to consider the case upon its merits and have disregarded that point although defendants have raised and pressed it.

■ 4. In accordance with what I have said herein, I state the following conclusion of law:

I declare the law to be that the owner of a building abutting on a public street and used for retail business purposes has an easement of light, air, view and prospect which may not lawfully be impaired by an adjoining owner through the erection in the street for private purposes of a canopy or sign, and that he is entitled to relief in equity by injunction against the continued maintenance of any such canopy or sign, whether or not permitted by the municipal authorities, which seriously or materially interferes with the free access of light or air or obstructs the view of or prospect from his building to his damage, but that he is not entitled to equitable relief by injunction against an obstruction of the nature mentioned which only insubstantially and immaterially intercepts light, air, view, or prospect without present pecuniary damage to him, and I declare that under these principles and upon the facts of this case the plaintiff is not entitled to the equitable relief of injunction.

Defendants' counsel may submit for approval and entry a form of decree dismissing the plaintiff's bill.