### KLABER et al. v. LAKENAN et al.

### No. 9584.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1933.

Rehearing Denied March 25, 1933.

Leland Hazard, of Kansas City, Mo. (Maurice H. Winger, Joseph T. Owens, and Winger, Reeder, Barker, Gumbiner & Hazard, all of Kansas City, Mo., on the brief), for appellants.

Ellison A. Neel, of Kansas City, Mo. (A. L. Cooper, Frank J. Rogers, and Cooper, Neel, Kemp & Sutherland, all of Kansas City, Mo., on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

This is a suit in equity, commenced by one Samuel Marcus Fechheimer against Robert F. Lakenan and Kansas City Operating Corporation, to enjoin the maintenance of a metal canopy and signs claimed to be obstructions to plaintiff's right to light, air, and the view to and from his business property in the city of Kansas City, Mo. Since the submission of the case appellant (plaintiff in the trial court) has died, and his administrator, Fred W. Klaber, and his widow, Alice S. Fechheimer, have been substituted as appellants. Parties will be designated as in the trial court.

Plaintiff was the owner of a lot and a two-story business building thereon abutting on the west side of Main street about one-half block north of Eleventh street in Kansas City, Mo. This property is in the retail district. Main street runs in a northerly and southerly direction. Defendant Lakenan is the fee owner of a plot of ground and a theater building thereon south of and adjacent to plaintiff's property, known as the Royal Theater. The Kansas City Operating Corporation holds the property under a ninety-nine year lease. It operates a motion picture theater in the premises. Plaintiff's property is leased to the Robinson Shoe Company for the purpose of a retail shoe store under a lease dated July 1, 1923, running for twenty years. This suit was instituted on September 30, 1927, and at that time defendants were

maintaining a marquee or metal canopy extending the entire width of the frontage of their property, and projecting into the street a distance of several inches beyond the outer edge of the sidewalk. This canopy was constructed of heavy iron work, supported by chains. Its height above the sidewalk was about ten feet, and its vertical section is about three feet in depth. Also defendants were maintaining a large electric sign projecting at right angles from the front of defendants' property above the canopy fifteen feet or more, with a height from top to bottom of approximately six feet. There was another electric sign of approximately the same size projecting at right angles from the front of the building into the street about the same distance, which was above the first-mentioned sign, and was used to advertise the name of the motion picture theater, while the lower sign was used to advertise current attractions at the theater. Prior to the institution of the suit the Kansas City Operating Corporation erected upon and above the permanent canopy at various times temporary signs advertising current attractions. This practice the court found had ceased before the institution of this suit. During the pendency of this suit defendants removed the two signs and replaced them with a single large vertical sign bearing the name of the theater, "Royal," which arose to a height of some fifty-six feet above the street. The sign is thirty-three feet high and five feet and one inch wide, and projects out from the face of the building a distance of some nine feet. Defendants also placed some permanent metal signs to be used for advertising attractions upon the three faces of the permanent canopy. The vertical sign and the other signs on the faces of the canopy are illuminated by electric lighting devices, while flood lights are maintained in the top of the canopy for the illumination of the entire front of the theater building. The Kansas City Operating Corporation purchased the theater and leasehold interest July 15, 1926, paying therefor $250,000. The canopy and horizontal electric signs had been erected ten years before with permission of the city of Kansas City. The fact of their existence entered into the consideration for the purchase of the leasehold interest. There is some question as to just what authority was granted for the change in the signs. Fechheimer purchased his property in May, 1923. He paid therefor some $297,000, and immediately leased the same to the Robinson Shoe Company at an annual rental of $18,456. At the time of his purchase Fechheimer was holding the property under a lease from the owner, which ran until 1928, and was paying a rental of $13,680 per year. For seven years before Fechheimer purchased this property defendants' predecessor in title was operating the Royal Theater and maintaining the canopy and the original electric sign under authority of a city ordinance and building permit. No complaint was made concerning the erection or maintenance of the canopy or sign prior to Kansas City Operating Corporation's purchase of the theater or in fact until March, 1927. The first floor of the Fechheimer Building has show windows and some signs indicating the nature of the tenant's business. Above the first floor are two signs laid flat against the building. The first, which is at the dividing line between the first and second floors, is in the words, "Robinson Shoe Company." The second is in the words, "The Big Shoe Store." These are large lettered signs extending across the entire front of the building. There are no window displays on the second floor. The Robinson Shoe Company maintains a wooden canopy and a canvas awning, which awning when extended "completely shuts off the view of adjacent building fronts from persons under or approaching the awning." The Robinson Shoe Company had two lighted show cases that extended out on the sidewalk two and one-half to three feet, and were about four and one-half feet high. They were removed just prior to the trial.

Plaintiff's complaint was that the canopy and signs obstructed a view of his store building from the street, especially from the intersection at Eleventh and Main streets, which is known as the heart of the retail shopping district in Kansas City; that as owner of the building he was entitled to an easement or right to light, air, and view from the street appurtenant to the property; and that defendants are interfering therewith.

The trial court filed an opinion (2 F. Supp. 785) and made findings of fact and announced a conclusion of law. It held that plaintiff was not entitled to the equitable relief demanded and dismissed the bill. The court found that the canopy and signs had no effect whatever in intercepting a view of the first floor of plaintiff's building from the street so far as its display windows were concerned; that the only direct effect caused by the canopy and signs upon the view of anything on plaintiff's building which advertised the business carried on therein was with respect to the two signs, and as to that stated: "As to the two upper signs on plaintiff's building the view of them is cut off by the

canopy and signs above and around the canopy from only a few points from which otherwise they would be visible. Being flat against the building it is obvious that they are best seen from in front or from across the street. This view is in no way or only to the very slightest extent obstructed. The pedestrian proceeding northward on the same side of the street as plaintiff's building could not see the two signs on that building if the theater canopy and signs were entirely absent until he was within a few feet of the building. For a short distance after otherwise he could see these signs his view of them is cut off by the canopy, but in that distance in which his view is intercepted he has a full and uninterrupted view of the plaintiff's first floor show windows, of the displays therein, and of the electric and metal signs on and about the windows." He refers to the fact that such pedestrian could have seen the lighted showcases advertising the business conducted in the plaintiff's building set out in front of the plaintiff's building by the tenant. The court also refers to the fact that there are many canopies of similar nature on Main street, which have electric signs around them and above them; that nearly every place of business on the street has an awning reaching out over about one-third of the width of the sidewalk.

There was conflicting evidence in the case as to the effect of the alleged obstruction of view upon the rental value of plaintiff's property. Of course, rentals have increased in Kansas City since the canopy and signs were erected, and as the court says, "Since many elements enter into rental value, that fact may not be said conclusively to negative plaintiff's contention in this regard." There was evidence that from the second floor of plaintiff's building the prospect outward and southward was intercepted somewhat by the corporate defendant's canopy and sign. As to this the court said: "It was quite clear, however, that that fact was of no practical at least of no present practical significance." Many pictures were introduced in evidence showing the situation at various times with reference to the canopy and signs temporary and permanent.

The trial court made findings of fact. We here set out some of them:

"7. I find the fact to be that the northward view of that part of the Robinson Shoe Store which is above the show windows on the first floor thereof of pedestrians on Main street who may be south of the Robinson Shoe Store and of others than pedestrians who may be south of the Robinson Shoe Store to some extent is interfered with and obstructed by the canopy and signs in front of the Royal Theater. And I find the fact to be that the view southward along the west side of Main street of persons on the second floor thereof also to some extent is interfered with and obstructed by the canopy and signs aforesaid. And I find the fact to be that the canopy and signs do not at all obstruct the view of the first floor show windows of the Robinson Shoe Store.

"8. I find the fact to be that while the view of persons on Main street who are south of the Robinson Shoe Store is as to the second story of that store and signs thereon somewhat and from certain points intercepted as aforesaid by the canopy and signs in front of the Royal Theater that interception of view is immaterial and insubstantial. I find also that the prospect from the second floor of plaintiff's building is intercepted only immaterially and insubstantially. The view of the second floor signs on plaintiff's building from the sidewalk on the opposite side of the street is not intercepted except to a most immaterial extent, nor is the view of persons on the roadway intercepted except also to the most immaterial extent. The view of persons on the sidewalk on the same side of the street as the plaintiff's building is intercepted by the canopy and signs, as such persons proceed northward on that sidewalk, for a distance of not more than one hundred and fifty feet or as they immediately approach and as they pass under the canopy. During all the time that the view of upper signs on plaintiff's building is thus intercepted the first floor show windows in plaintiff's building and the signs thereon and thereabout are in full and unobstructed view.

"9. I find the fact to be that the rental value of plaintiff's property has not been and is not decreased by reason of the canopy and signs on the theater building referred to in evidence."

The findings of fact seem to give a very clear picture of the situation. The trial court evidently gave very close attention to the facts in this case, and made a personal inspection of the property and its surroundings in the daytime and at night to study the extent of the obstruction to the view of plaintiff's building caused by the signs and the canopy.

The findings of fact made in an equity proceeding are of course not conclusive on an appellate court, but where there is conflicting evidence they are regarded as presumptively correct and will not be disturbed

unless a serious mistake of fact appears. That is the rule of this court. Fay v. Hill (C. C. A.) 249 F. 415; Ridge v. Healy (C. C. A.) 251 F. 798; Hamlin v. Grogan (C. C. A.) 257 F. 59; Conklin v. Tom C. Mining Co. (C. C. A.) 277 F. 807; Public Ledger Co. v. Post Printing & Publishing Co. (C. C. A.) 294 F. 430; Coats v. Barton (C. C. A.) 25 F.(2d) 813; Karn v. Andresen (C. C. A.) 60 F.(2d) 427.

Upon and in accordance with the findings of fact the court made the following conclusion of law: "I declare the law to be that the owner of a building abutting on a public street and used for retail business purposes has an easement of light, air, view, and prospect which may not lawfully be impaired by an adjoining owner through the erection in the street for private purposes of a canopy or sign and that he is entitled to relief in equity by injunction against the continued maintenance of any such canopy or sign, whether or not permitted by the municipal authorities, which seriously or materially interferes with the free access of light or air or obstructs the view of or prospect from his building to his damage, but that he is not entitled to equitable relief by injunction against an obstruction of the nature mentioned which only insubstantially and immaterially intercepts light, air, view, or prospect without present pecuniary damage to him and I declare that under these principles and upon the facts of this case the plaintiff is not entitled to the equitable relief of injunction."

That the abutting owner of a lot on a public street has an easement of light and air therefrom and unimpeded egress from and access to it is unquestioned. Not all the courts or writers agree that he has the same easement as to view of his property. In 13 Ruling Case Law, p. 234, § 196, it is said: "There is conflict as to whether or not the view of a building from the street on which it stands, when considered with reference to its value as the means of attracting the attention of passers-by in the street to goods displayed in the windows, is an easement of such nature as to entitle the owner or tenant of the building to the protection of a court of equity. Some courts hold that interference with the easement of view under such circumstances constitutes special damage which will entitle the owner of the building to an injunction while others deny the right to injunctive relief."

The question of light, air, egress, or access casement is not in this case. The question is one of the right to view. Probably the most quoted case on the subject is First National Bank of Montgomery v. Tyson, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; Id. 144 Ala. 457, 39 So. 560, where it is held that an easement or view from every part of the public street belongs to one owning property abutting on the street and will be protected by the courts against illegal encroachments. Another leading case on the subject is Bischof v. Merchants National Bank, 75 Neb. 838, 106 N. W. 996, 5 L. R. A. (N. S.) 486, where the court takes the same position as to an easement. In a note to this case in 5 L. R. A. (N. S.) 486, the commentator states: "Whether or not the view of a building from the street on which it stands, when considered with reference to its value as the means of attracting the attention of passers-by in the street to goods displayed in the windows, is an easement of such nature as to entitle the owner or tenant of the building to the protection of a court of equity, is a question upon which there is an irreconcilable difference of opinion. Nor can it be said that the weight of authority is with either side, though there would seem to be a growing tendency, at least among the latest decisions of the courts in this country, to hold with Bischof v. Merchants Nat. Bank. Accordingly, it has been held that an easement of view from every part of a public street into a building on the street, affording the opportunity of attracting customers by a display of goods, is a valuable right, and even one implied in the dedication of the street, or which the owner cannot be deprived by an encroachment on the street by an adjoining proprietor, and that an injunction would lie to prevent such encroachment."

As sustaining the theory of easement as to view from a public street as well as light and air, see Dill v. Board of Education of Camden, 47 N. J. Eq. 421, 20 A. 739, 10 L. R. A. 276; Village of Port Clinton v. Fall, 99 Ohio St. 153, 124 N. E. 189; Anthony Carlin Co. v. Halle Bros. Co. et al., 23 Ohio App. 115, 155 N. E. 398; World Realty Co. v. City of Omaha, 113 Neb. 396, 203 N. W. 574, 40 A. L. R. 1313; Davis v. Spragg, 72 W. Va. 672, 79 S. E. 652, 48 L. R. A. (N. S.) 173; Field v. Barling, 149 Ill. 556, 37 N. E. 850, 24 L. R. A. 406, 41 Am. St. Rep. 311; Townsend v. Epstein, 93 Md. 537, 49 A. 629, 52 L. R. A. 409, 86 Am. St. Rep. 441; Brown-Brand Realty Co. v. Saks & Co., 126 Misc. 336, 214 N. Y. S. 230; Williams v. Los Angeles Ry. Co., 150 Cal. 592, 89 P. 330; Perry v. Castner, 124 Iowa 386, 100 N. W. 84, 66 L. R. A. 160, 2 Ann. Cas. **363.**

Cases practically holding that there is no easement as to view from the street of the building and that no damages can be recovered for its obstruction are Garrett v. Janes, 65 Md. 260, 3 A. 597 (which is criticized in Dillon on Corporations [5th Ed.] vol. 3, § 1184); Stroup v. Rauschelbach, 217 Mo. App. 236, 261 S. W. 346.

The decided weight of authority as well as sound reason is in favor of the proposition that an abutting owner of property on a public highway has the easement, not only of light, air, and access, but of a reasonable view of his property from such public street.

The permission of a city council to erect an obstruction thereto is no defense where the rights of a property owner have been infringed. A city cannot consent that the owner of one lot may appropriate portions of the street in front of his neighbor's property, or so use the street in front of his own property as to substantially injure his neighbor's property.

The real question here is whether the circumstances presented are such as to warrant equitable relief by injunction. To grant it in case of a public nuisance there must be some special injury to the plaintiff peculiar to him aside from and independent of the general injury to the public. Lewis v. Pingree Nat. Bank, 47 Utah, 35, 151 P. 558, L. R. A. 1916C, 1260; Coombs v. Fuller (Mo. App.) 228 S. W. 870; Lademan v. Lamb Const. Co. (Mo. App.) 297 S. W. 181; Bischof v. Merchants Nat. Bank, 75 Neb. 838, 106 N. W. 996, 5 L. R. A. (N. S.) 486; Field v. Barling, supra; Townsend v. Epstein, supra; Newman v. City of Marceline, 222 Mo. App. 980, 6 S.W.(2d) 659; Elliott Roads & Streets (3d Ed.) § 850.

The special injury claimed is the obstruction of the view of plaintiff's building from the street. Not every obstruction to view from a highway would bring a case within equitable jurisdiction and warrant the issuance of the extraordinary writ of injunction. It must appear that the obstruction to view is not merely slight, but that it is so substantial as to result in serious injury and damage to the property.

Close in point is Davis v. Spragg, 72 W. Va. 672, 79 S. E. 652, 48 L. R. A. (N. S.) 173, a carefully considered case, and somewhat similar to the case at bar. There the court says, page 655 of 79 S. E., 72 W. Va. 672, 48 L. R. A. (N. S.) 173: "We are inclined to think that these cases determine the law correctly, and that, if plaintiffs in this case had proven that the obstruction of the view from the street to the front of their buildings seriously and injuriously affected their actual or rental value, they would have been entitled to relief. But, upon careful reading of the evidence, we think the chancellor correctly decided that they had failed to prove any such damages. In view of the character of the nuisance complained of and the nature of the view interfered with, it being only a view from the upper window upon a portion of the sidewalk, it is an injury which we think is more fanciful than real. The maintenance by plaintiffs themselves of a similar porch over the front of their buildings, though extending not so far over the sidewalk as defendant's porch, is a circumstance clearly indicating that their alleged injury is without real foundation. They have no right to a view which can be enjoyed only from their own verandas, because they are unlawfully maintained and constitute a public nuisance as well as defendant's porch. If the obstruction of the upper windows from the view of a pedestrian in the street below is the ground of complaint, it would seem that plaintiffs are more injured by the maintenance of their own porticoes than they are by that of defendant, because a pedestrian on the sidewalk, standing in front of the Spragg building, could not read a sign in the upper windows of either of plaintiffs' buildings even if Spragg's porch were not there. He would be viewing it at too great an angle; and the view from the sidewalk, immediately in front of plaintiffs' buildings, is obstructed by their own verandas. The Spragg porch, in our opinion, does not obstruct the view of a person in the street from any point therein, from which a sign so placed could be read." See, also, Talbott v. King, 32 W. Va. 6, 9 S. E. 48; Jenks v. Williams, 115 Mass. 217; World Realty Co. v. City of Omaha, supra; Hellinger v. City of New York, 181 App. Div. 254, 168 N. Y. S. 271; Brown-Brand Realty Co. v. Saks & Co., supra; Lewis v. Pingree Nat. Bank, supra; Williams v. Los Angles Ry. Co., supra; Mint Realty Co. v. Wanamaker, 231 Pa. 277, 79 A. 514; Hay v. Weber, 79 Wis. 587, 48 N. W. 859, 24 Am. St. Rep. 737.

There is no possible ground for disturbing the finding by the District Court that such obstruction as did exist had no effect on the rental value of plaintiff's premises. The opinion testimony on this matter was of little value, but such as there was was squarely in conflict, and the District Court's finding should be conclusive. Plaintiff himself did not elect to testify in the matter, and there

was no evidence that his tenant had asked for a reduction in rent or threatened to leave, or was complaining in any way. Such facts are of significance, see Davis et al. v. Spragg, supra, and in First Nat. Bank of Montgomery v. Tyson, supra, constituted an element of injury in the case as made by the pleadings that is thus not present here. There was also no evidence of a decline in the volume of business done by plaintiff's tenant since the erection of the canopy and signs, which fact would also have been of significance in determining the extent of injury. See Lewis v. Pingree Nat. Bank, supra. On the other hand, there was undisputed evidence that after the canopy and signs in their original form had been maintained a matter of several years, plaintiff first acquired the adjoining property and immediately leased it to his present tenant at a rental of $4,776 per year in excess of what it had been producing up to that time, and that such increased rental is still being paid. As plaintiff points out, the fact of the increased rental is no doubt not due to the existence of defendants' canopy and signs, but it is nevertheless of some significance as bearing upon the absence of any injurious effect of the canopy and signs upon the rental value of plaintiff's premises. It must be borne in mind that the burden of showing decreased rental value was on plaintiff, and we would clearly not be justified in reversing the District Court's finding purely on the basis of the contradicted opinion testimony of plaintiff's expert witnesses, which was all the evidence plaintiff adduced in the matter.

In Brown-Brand Realty Co. v. Saks & Co., supra, the decision was by a court of orginal jurisdiction in which the writer of the opinion was also the trier of fact. On the basis of all the evidence and also a personal inspection of the premises that judge was of the opinion that substantial injury, including a decrease in rental value, was proved. On an exactly similar acquaintance with the facts the trial judge in the case at bar was of the opinion that substantial injury was not proved; that there was no adverse effect on rental value. Aside, therefore, from the facts of the two cases being materially different, that case presents no controlling authority requiring reversal of the court below in the case at bar. The same may also be said of World Realty Co. v. City of Omaha et al. (Orkin et al., Interveners), supra, and Anthony Carlin Co. v. Halle Bros. Co. et al., 23 Ohio App. 115, 155 N. E. 398, which are the only other cases which seem to us at all to support plaintiff's contention in this case.

Though the decisions therein were made on appeal, the court in each instance was clearly of the opinion that substantial injury was proved, and in the World Realty Company Case the court explicitly conceded the requirement of such injury and approved such cases as Davis et al. v. Spragg, Hay v. Weber and Mint Realty Co. v. Wanamaker, supra, all of which tend strongly to support the conclusion of the District Court in the case at bar.

We deem this case a close one. As long, however, as the trial court found as a question of fact that there was no obstruction at all to the view of the first floor show windows of the Robinson Shoe Store and that the prospect from the second floor of the building was intercepted only immaterially and insubstantially, and as we cannot say the court was clearly mistaken, the conclusion of law of the court that plaintiff was not entitled to equitable relief necessarily follows.

The court was evidently impressed somewhat by the contention that even were there no present damage the situation could change, that another building might be erected by plaintiff on this site as an office building, and the matter of prospect become of particular significance, and that then plaintiff might be held to have lost some rights by the lapse of time. The court states, however, that in his judgment plaintiff would then have the right to equitable relief, and that it will not have been lost because of any claim of not being timely urged. Obviously the District Court was right in its conclusion that the mere fact of this suit having been brought will be sufficient to defeat a claim of laches greater than such as already exists. Laches is an equitable doctrine entirely distinct from the acquisition of title by prescription or limitations; and the fact of this suit having been brought is evidence that plaintiff is not now sleeping on his rights. And it is somewhat difficult to see how defendants will gain prescriptive rights, as distinguished from a defense of laches, in a public street. To avoid any misapprehension as to the scope of this decision we desire to say that the case is determined upon the facts as to the situation existing at the time the trial court made its findings, and this opinion may be expressly stated to be without prejudice to the bringing of another suit whenever circumstances so change that plaintiff is able to show substantial injury. Under changed circumstances, the present determination will not be res adjudicata. It would be most unreasonable to enjoin an obstruction not resulting in present substantial injury because

of the mere possibility that circumstances may so change as to bring about, at a later time, such injury. Having considered the case on the merits, we pass such other questions as defendants' present claim of laches, the right of plaintiff, having leased the premises under long-term lease, to sue as owner of the reversion, and partial defenses raised by defendants that would be of significance only in the event of our having found for plaintiff on the merits.

The decree of the District Court is hereby affirmed.